681 So.2d 994 (1996)
STATE of Louisiana,
v.
Kenneth ROGERS.
No. 95 KA 1485.
Court of Appeal of Louisiana, First Circuit.
September 27, 1996.
*995 Michael Distefano, Plaquemine, for State-Appellee.
C. Jerome D'Aquila, New Roads, for Defendant-Appellant.
Before LOTTINGER, C.J., and FOIL, and FOGG, JJ.
FOGG, Judge.
Kenneth Rogers was charged by bill of information in counts one and two with distribution of cocaine and in counts three and four with possession with intent to distribute cocaine, violations of LSA-R.S. 40:967(A). The charge on count four was dropped by the district attorney following the trial court's granting of a motion to suppress. Defendant pled not guilty and, after trial by jury, was convicted on counts one, two and three. The trial court sentenced him to serve a term of *996 ten years with the Department of Corrections on the first count of distribution, fifteen years with the Department of Corrections on the second count of distribution, and five years with the Department of Corrections on the count of possession with intent to distribute, all to be served consecutively to each other. Defendant has appealed, urging nine assignments of error. Assignment numbers one, two, three, six, and seven were not briefed on appeal and, therefore, are considered abandoned. See Uniform Rules Courts of Appeal, Rule 2-12.4.

FACTS
On April 2, 1992 and April 23, 1992, defendant reportedly sold cocaine to an undercover narcotics agent. Detective Kenneth Mitchell, a narcotics agent with the St. John the Baptist Sheriff's Office, was assigned to the River West Narcotics Task Force. On April 2, 1992, he was working in the White Castle area when he approached defendant in the parking lot of the Cracker Barrel. Det. Mitchell asked defendant where he could find a "twenty," referring to a twenty dollar piece of crack cocaine. Defendant thereafter produced two small pieces of crack cocaine which he sold to Det. Mitchell. Det. Mitchell stated that he had a confidential informant (CI) in the car with him, but that the CI did not take part in the transaction. The detective stated that he got a good look at defendant who identified himself as Kenneth Rogers. Further, he identified defendant from police photos.
On April 23, 1992, Det. Mitchell saw defendant inside Freddie's Lounge in White Castle. He approached him and asked where he could get two twenty's worth of crack cocaine. Defendant requested that Det. Mitchell follow him outside where he displayed several pieces of crack cocaine. Det. Mitchell chose the larger pieces and paid forty dollars to defendant. On this occasion, Det. Mitchell was not accompanied by the CI.
On August 19, 1992, Lt. Timothy Collins of the Plaquemine City Police Department and the LEAD Narcotics Task Force was contacted by the CI who stated that defendant would be at the Wag-A-Sac grocery with a large amount of crack cocaine. He arranged to have the CI contact defendant to verify that he had the crack cocaine before the police moved in. Prior to this, the CI was strip searched to insure that he was not carrying contraband. Lt. Gulotta, Det. Noel and Det. Cox assisted Lt. Collins. When they arrived on the scene, the CI approached defendant's car, stayed there a couple of seconds, then walked away with his hands in his pockets (the pre-arranged signal to indicate that defendant had crack cocaine in his possession). The police pulled in behind defendant's vehicle. Defendant, who was counting something in his hand, looked up, jumped out of his car and started running. The officers informed him they were police officers and told him to stop. As defendant was running down the side of the Wag-A-Sac, Det. Noel, who had been inside the store, came out and apprehended him. At this time defendant attempted to throw what was in his hand. The officers observed what appeared to be white particles of crack cocaine fly out of a bottle in defendant's hand and land in the parking lot. Twenty-one white pieces were collected and turned out to be crack cocaine.

ASSIGNMENT OF ERROR NUMBER 4
By this assignment of error, defendant maintains that the trial court erred when it allowed state witnesses to testify when the state failed to serve a written notice on defendant stating the names and addresses of witnesses the state intended to use to disprove defendant's alibi defense. Defendant relies on LSA-C.Cr.P. art. 727(B).
As the state called its first witness, Det. Mitchell, defense counsel objected to any witnesses who would testify that defendant was present at any particular place or time in contradiction to his alibi defense. Defense counsel stated at trial that the state had served upon the defense a notice to disclose all alibi witnesses, which the defense alleged it did. Defendant contends that LSA-C.Cr.P. art. 727(B) requires the state to reciprocate.
Following argument on the matter, the trial court stated:

*997 I'm not going to grant the motion, but I will say that the law is clear. They are (the state) suppose to give you the information ten days thereafter. No less than ten days before trial. But, since you had full disclosure of their file you knew who the witnesses were going to be. It's no surprise to you and you're not prejudiced by it. But, I will say this, in the future you know, the whole purpose of this particular article, it makes the defendant give over the information and it's for a reason, that the District Attorney's Office can investigate these individuals, now. And, I don't know whether or not the District Attorney's Office, but from what I've just heard, I don't think they've investigated or questioned these people. We're missing the boat. The next case I have with you, ten days, you give him the notice, and I suggest that you interview these people.
LSA-C.Cr.P. art. 727 provides, in pertinent part:
A. Upon written demand of the district attorney stating the time, date, and place at which the alleged offense was committed, the defendant shall serve within ten days, or at such different time as the court may direct, upon the district attorney a written notice of his intention to offer a defense of alibi. Such notice by the defendant shall state the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom he intends to rely to establish such alibi.
B. Within ten days thereafter, but in no event less than ten days before trial, unless the court otherwise directs, the district attorney shall serve upon the defendant or his attorney a written notice stating the names and addresses of the witnesses upon whom the state intends to rely to establish the defendant's presence at the scene of the alleged offense and any other witnesses to be relied on to rebut testimony of any of the defendant's alibi witnesses.
. . . .
D. Upon the failure of either party to comply with the requirements of this rule, the court may exclude the testimony of any undisclosed witness offered by such party as to the defendant's absence from or presence at, the scene of the alleged offense. This rule shall not limit the right of the defendant to testify in his own behalf.
E. For good cause shown, the court may grant an exception to any of the requirements of Subsections A through D of this Section.
Under Article 727(B), the state is only required to supply the defendant with the name and address of the witness upon whom the state intends to rely to establish the defendant's presence at the scene of the offense. The state is not required to supply the defendant with the substance of the witness' testimony. State v. Foster, 26-143 (La. App. 2 Cir. 12/9/94); 647 So.2d 1224, writ denied, 95-0548 (La.6/30/95); 657 So.2d 1026. The purpose of the discovery rules is to eliminate unwarranted prejudice from surprise testimony at trial. State v. Ford, 489 So.2d 1250 (La.1986), cert. granted (on other issues), 479 U.S. 1077, 107 S.Ct. 1272, 94 L.Ed.2d 133 (1987).
In State v. Smith, 430 So.2d 31 (La.1983), the Supreme Court assumed without deciding that the state was required to furnish the defendant with notice of its intent to use the testimony of a rape victim to establish the presence of the defendant at the scene. In any event, the Supreme Court found that the trial court did not abuse its discretion in allowing the victim to testify following the state's noncompliance with the notice of alibi disclosure requirements of LSA-C.Cr.P. art. 727(B). It listed five factors to consider to determine whether a trial court properly exercised its discretion, including: (1) the amount of prejudice that resulted from the failure to disclose, (2) the reason for the nondisclosure, (3) the extent to which the harm caused by nondisclosure was mitigated by subsequent events, (4) the weight of the properly admitted evidence supporting the defendant's guilt, and (5) other relevant factors rising out of the circumstances of the case. State v. Smith, 430 So.2d at 36.
In the instant case, the witnesses the state used to establish the defendant's presence at the scene of the alleged offense were *998 all police officers. Defendant was aware of these witnesses from the day he was charged. The state provided open file discovery, and many of the witnesses testified at pre-trial hearings on motions. Thus, there was no prejudice to defendant by the state's failure to comply with the requirements of LSA-C.Cr.P. art. 727(B). This assignment has no merit.

ASSIGNMENT OF ERROR NUMBER 5
Defendant maintains the trial court erred when it failed to allow defense counsel to cross-examine the police officers regarding the CI's drug history. Defendant argues that this information is necessary to impeach the credibility of the CI.
During the cross-examination testimony of Charles Collins, Chief of Narcotics with the West Baton Rouge Parish Sheriff's Office, defense counsel asked whether or not the CI had a drug history. The district attorney objected to the relevancy of this question. In brief, defense counsel argues that the question of pending drug charges against the CI would indicate that he is in a position to benefit from his identification of defendant. Counsel also relies on LSA-C.E. arts. 607 and 608 which provide methods to attack the credibility of witnesses.
Counsel's argument is flawed in several respects. First and foremost, defendant cannot attack the credibility of a witness who has not testified. Accordingly, counsel's reliance on articles of evidence which would allow attacks on the credibility and/or character of a witness is misplaced. In the instant case, the CI did not testify; thus, his character and credibility were not in question. It was the police officers whose testimony placed the defendant at the scene of the crimes and whose testimony proved that defendant had sold and possessed the drugs in question.
Further, defendant has failed to show that the CI participated in the transactions at issue in any material manner. A review of the record reveals that, at most, the CI rode around with Det. Mitchell on April 2, 1992, and that he verified that defendant had the drugs on his person on August 19, 1992. On both of these occasions the police officers relied on their own personal observations to prove that defendant actually sold and possessed the crack cocaine at issue. Det. Mitchell stated that the CI was in the car with him, but that he did not take part in the transaction. He further stated that he got a good look at defendant, who had identified himself as Kenneth Rogers. This was verified by other police photos. On August 19, 1992, the CI contacted Lt. Collins to say that defendant would be at the Wag-A-Sac grocery with a large amount of crack cocaine. The CI verified that defendant had the crack cocaine and signaled the officers, who captured defendant in possession of the drugs. Thus, the CI did not materially participate in the criminal transactions at issue, and his possible drug history is irrelevant to the present proceedings.

ASSIGNMENT OF ERROR NUMBER 8
In this assignment of error, defendant maintains that the trial court erred when it denied his request for a new trial based on juror misconduct. Defendant contends that a statement made by a juror to police officers after trial would tend to indicate that the juror had lied during voir dire when she stated that she did not know defendant.
The defendant's wife and daughter reportedly heard a juror, Ms. Kessler, tell deputies following the trial, "Boys, you did a fine job. We finally got him." Following the defense motion for a new trial, the trial court held a hearing at which defendant's wife, defendant's daughter, Ms. Kessler, and two police officers testified. Ms. Kessler denied the statement, saying that she merely congratulated the officer for doing a good job. She denied that she stated, "We finally got him." Lt. Timothy Collins testified that while escorting some of the jurors to their vehicles, Ms. Kessler told the officers that they had done a good job and that she was glad they were working in the White Castle area. Det. Noel testified similarly. The other jurors who were present were not called to testify.
Our review of the record reveals that the trial court did not abuse its discretion by denying the motion for new trial. There is nothing in the record to indicate that the juror lied during voir dire when she denied *999 knowing the defendant or that her knowledge of defendant prejudiced his case. Apparently, the trial court rejected the testimony of defendant's family members as selfserving. Further, the trial court stated that there was no reason not to believe Ms. Kessler and the police officers who testified. Thus, this assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER 9
In his final assignment of error, defendant argues that the sentence imposed by the trial court was excessive. Defendant orally requested the trial court to reconsider the sentences, which the trial court denied. Defendant argues that the trial court should not have imposed consecutive sentences because the convictions arose out of a single course of criminal conduct. Further, he argues that the trial court improperly considered inappropriate factors and failed to consider other factors mandated by the sentencing guidelines, LSA-C.Cr.P. art. 894.1.
Defendant was convicted of two counts of distribution of cocaine and one count of possession of cocaine with intent to distribute. The trial court sentenced him to serve a term of ten years imprisonment on the first count of distribution, fifteen years imprisonment on the second count of distribution and five years on the count of possession with intent to distribute, all to be served consecutively to each other. Defendant's sentence, as imposed by the trial court, results in a term of thirty years in prison. Defendant's exposure for each count of distribution and possession with intent to distribute was between five and thirty years. See LSA-R.S. 40:967(B)(1). Thus, defendant's penalty exposure was between fifteen and ninety years.
Under the law in effect at the time of defendant's sentencing, a trial court was required to consider the Felony Sentencing Guidelines promulgated by the Louisiana Sentencing Commission in imposing sentence and to state for the record the considerations taken into account and the factual basis for the sentences imposed. LSA-C.Cr.P. art. 894.1(A) & (C) (prior to amendment and reenactment by 1995 La. Acts No. 942, § 1). Provided the court complied with these requirements of article 894.1, it had "complete discretion to reject the Guidelines and impose any sentence which [was] not constitutionally excessive, but [was] within the statutory sentencing range for the crime of which a defendant [had] been convicted...." State v. Smith, 93-0402, p. 3 (La.7/5/94); 639 So.2d 237, 240 (on rehearing)(footnote omitted). The Supreme Court described our duty as a reviewing court as follows:
[W]here the trial judge has considered the Guidelines and imposed a sentence, adequately stating for the record the considerations taken into account and the factual basis for imposition of that sentence, an appellate court is limited to a review of the sentence imposed for constitutional excessiveness, without regard as to whether the trial judge either employed or deviated from the Guidelines.
State v. Smith, 93-0402, p. 3, 639 So.2d at 240.
Our review of the record fails to disclose that the court in any way alluded to or mentioned the Guidelines at sentencing. Although the trial court requested a pre-sentence investigation report, it also fails to contain any reference to the Guidelines. Hence, we conclude that there is nothing in the entire record reflecting that the trial court actually considered the Guidelines in imposing sentence.
Effective August 15, 1995, the Legislature repealed the provision in LSA-C.Cr.P. art. 894.1(A) requiring a trial court to consider the Guidelines promulgated by the Louisiana Sentencing Commission. See 1995 La. Acts No. 942, § 1. The Guidelines were applicable to sentences imposed on and after their effective date, January 31, 1992, even when the offenses were committed prior to their effective date and even when an original sentence was imposed prior to the effective date and a new sentence imposed thereafter. See State v. O'Neal, 94-1902 (La.App. 1 Cir. 11/9/95); 665 So.2d 61, writ denied, 95-2975 (La.3/15/96); 669 So.2d 433. In State v. O'Neal, 94-1902, at p. 7; 665 So.2d at 64-65, this court stated:
To that extent, the Guidelines were retroactive. Similarly, the repeal of the provisions *1000 of Article 894.1A requiring a trial court to consider the Guidelines promulgated by the Louisiana Sentencing Commission is applicable to new sentences imposed on and after August 15, 1995, even when the original sentence was imposed prior thereto.
Therefore, although we recognize that under the jurisprudence and statutory scheme which existed when the instant sentence was imposed, the sentence would be vacated because the record does not reflect consideration of the Guidelines by the trial court, we decline to vacate defendant's sentence. Any new sentence would be imposed at a time when the trial court is no longer required to consider the Guidelines. Hence, to vacate the instant sentence for failure to consider the Guidelines promulgated by the Louisiana Sentencing Commission would be an exercise in futility.
In imposing the instant sentence, the court gave the following reasons:
The gentleman has been one of the biggest drug dealers that was ever convicted in my court. He's a danger to the public. This is what our problem is, drugs and guns, and I'm taking him off the street for, [what] I think is a reasonable period. He could have gotten ninety years. But, this will give him a chance to get out. He's a gentleman who was a postman with a good life, a very nice family, nice wife who I've met. I've seen his daughter here in court. The evidence was clear. And, from other cases that I've heard his name mentioned in I have no doubt that he's one of the largest distributors we've had in the White Castle area. It's time to stop and I'm going to stop it right now with him. I don't think probation would do any good for him. It would put him back on the street and apparently he doesn'the's never admitted to his crime. If he had at the beginning I'm sure he would have received a lesser sentence. These type [sic] of individuals need to be taken off of the street for the safety of the public and our children, and I guess I'm the one who is going to do it.
LSA-C.Cr. P. art. 883 provides, in pertinent part:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. (Emphasis added)
This article specifically excludes from its scope sentences the court expressly directs are to be served consecutively. State v. Littleton, 436 So.2d 500 (La.1983). Although the imposition of consecutive sentences requires particular justification when the crimes arise from a single course of conduct, consecutive sentences are not necessarily excessive. Other factors must be taken into consideration in making this determination. See State v. Freeman, 577 So.2d 216 (La.App. 1 Cir.), writ denied, 580 So.2d 668 (La.1991). Consecutive sentences are justified when the offender poses an unusual risk to public safety. State v. Hunter, 628 So.2d 57 (La.App. 1 Cir.1993), writ denied, 93-2837 (La.2/11/94); 634 So.2d 372. In the instant case it is clear that the trial court considered defendant to be an unusual risk to the public. Thus, the imposition of consecutive sentences was not in error.
As noted by the trial court, the defendant obviously is a drug dealer who has shown no remorse for his crime and who is a threat to society. Based upon the entirety of the record, and particularly the sentencing reasons articulated by the trial court, we find no error in the court's determination that these sentences were appropriate for this defendant and these offenses. Nor do we find the sentences excessive because the court ordered them served consecutively. The sentencing record supports their imposition for this defendant who clearly poses an unusual risk to public safety. The total amount of the sentences, thirty years, is not shocking to our sense of justice; accordingly, this assignment is meritless.

PATENT ERROR
In reviewing the record for patent error, we find that the trial court failed to give defendant credit for time served. The *1001 failure to credit defendant with time served is error patent. See LSA-C.Cr.P. art. 880; State v. Greer, 572 So.2d 1166 (La.App. 1 Cir.1990). Resentencing is not required. However, we order that defendant be given credit for time served, remand the case, and order the district court to amend the commitment, if necessary, to reflect that defendant is to receive credit for time served. See LSA-C.Cr.P. art. 882.
CONVICTIONS AFFIRMED; SENTENCES AFFIRMED AS AMENDED; AND, CASE REMANDED WITH ORDER.