745 So.2d 217 (1999)
STATE of Louisiana
v.
Dedrick JOHNSON.
No. 99 KA 0385.
Court of Appeal of Louisiana, First Circuit.
November 5, 1999.
*218 Doug Moreau, District Attorney, Jesse Bankston, Asst. District Attorney, Baton Rouge, Counsel for State of Louisiana, Appellee.
Paula C. Marx, Lafayette, Counsel for Dedrick Johnson, Appellant.
Before: CARTER, C.J., LeBLANC and PETTIGREW, JJ.
LeBLANC, J.
Defendant, Dedrick[1] Johnson, was charged by grand jury indictment with aggravated burglary (Count 1), a violation of La. R.S. 14:60, and with two counts of armed robbery (Counts 2 and 3), violations of La. R.S. 14:64. He pled not guilty. After a trial, the jury found defendant guilty as charged on all counts. Subsequently, after receiving a pre-sentence investigation report, the trial court sentenced defendant to 30 years at hard labor on Count 1 (aggravated burglary) and 55 years at hard labor, without benefit of parole, probation or suspension of sentence, *219 on Count 2 (armed robbery) to run concurrent with the sentence on Count 1. The trial court also sentenced defendant on Count 3 (armed robbery) to ten years at hard labor, without benefit of parole, probation or suspension of sentence, to run consecutive to the sentence imposed on Counts 1 and 2. Defendant made a motion to reconsider his sentences, which was denied by the trial court. He now appeals.

FACTS
About 10:30 a.m. on January 26, 1997, a woman living on Fairwoods Drive in North Baton Rouge saw a man, later identified as defendant, run up the driveway, jerk open and enter the door to the house of Ella Thibodeaux. The neighbor notified another neighbor, Gregory Hayes, about what she had seen and called the police.
When defendant entered the home, Ms. Thibodeaux, a woman in her eighties, heard a noise and went into her kitchen. She saw defendant holding a pistol; he demanded one hundred dollars. Ms. Thibodeaux answered that she did not have that amount of money and after he demanded her to kneel down, the elderly woman said she would give defendant whatever cash she had. Ms. Thibodeaux retrieved her wallet; defendant grabbed the $11.00 in cash and fled from the home.
As defendant was fleeing, Gregory Hayes approached the side door of Ms. Thibodeaux's home and heard shouting and cursing. Defendant came toward the door, threatened to kill Mr. Hayes, kicked open the door and fled. Mr. Hayes was about twenty feet away from defendant when he saw his face. Mr. Hayes ran to another neighbor's yard where he again saw defendant, who was now about forty feet away. Mr. Hayes realized that earlier that morning he had seen the same man walk past him on Fairwoods Drive. At that time he observed the man for about fifteen seconds while they were walking toward each other.
Later the same morning less than a tenth of a mile from the Fairwoods location, Mr. Warren Nettles was robbed of his vehicle in the parking lot of his apartment complex. Mr. Nettles was exiting his vehicle when defendant approached, pointed a gun at him and said, "Give it up." Defendant threatened to kill Mr. Nettles and demanded his car keys. The victim was able to observe defendant, who was about three feet away during the robbery, for about three or four minutes. After defendant fled in his vehicle, Mr. Nettles reported the robbery and gave a description of the suspect that included age, height and weight. Mr. Nettles' vehicle was found a few hours later about a half-mile away.
A few weeks later, Mr. Hayes, the witness in the Thibodeaux robbery, was driving near his home when he saw Baton Rouge Detective Willie Vick talking with a man. Realizing that the man was the person who had robbed Ms. Thibodeaux, Mr. Hayes drove to the police substation and left that information for the detective. Subsequently, after Detective Vick learned that Mr. Hayes recognized the suspect in the Thibodeaux robbery, he constructed a photographic lineup display. This photo lineup was shown separately to Mr. Hayes and Mr. Nettles. Mr. Hayes identified defendant as the man he saw leaving the Thibodeaux residence; and Mr. Nettles identified defendant as the perpetrator in his robbery.
At trial, Mr. Hayes indicated that he had never seen defendant before seeing him that day and that he was positive about his identification. Mr. Nettles testified that he did not know Gregory Hayes and was not aware that Mr. Hayes had also been shown the photographic lineup. He also identified defendant in court.
During his trial testimony, Detective Vick admitted that Mr. Nettles had given a general description of the suspect. He stated that the description included the robber's approximate height, weight, color, age and type of clothing. Additionally, the description received of the suspect in both robberies indicated the same approximate *220 height and the same type of clothing: white sweatshirt and dark pants or blue jeans.
Baton Rouge Police Officer Daniel Brim testified that he was dispatched at 10:33 a.m. to the scene of the robbery on Fairwoods Drive. He obtained a description of the suspect from individuals and at the time, Mr. Hayes advised the officer that he would be able to identify the suspect.
Three alibi witnesses testified on defendant's behalf. Ms. Lagina Jones testified that she lived on Napoleon Street in South Baton Rouge near defendant's aunt. Because defendant and his mother had previously lived in the neighborhood, Ms. Jones knew defendant all his life. On January 26, 1997, around 8:00 a.m. she saw defendant near her home. Because that day was Super Bowl Sunday, she was able to recall seeing defendant. Ms. Jones stated that she normally looks outside her window every thirty minutes. Thus, although she was inside her home on that day, she saw defendant until about 2:00 p.m.
Ms. Fannie Cain, who also lived on Napoleon Street, indicated that she knew defendant since he was about two to three years old. On the morning of the robberies, she saw defendant in the neighborhood when she left to go to the grocery store. When she returned about an hour later, defendant was still there and she asked him to bring her groceries inside her house. Ms. Cain's husband, Clarence, testified that he knew defendant often visited his aunt and that it was customary for defendant to "hang around" their neighborhood. However, he did not recall whether he saw defendant on January 26.

EXCESSIVE SENTENCES
In assignment of error number one, defendant contends that under the facts of the offenses involving Ms. Thibodeaux, the sentences imposed for Counts 1 and 2 were excessive. Specifically, he argues that because of his young age, his sentences are "tantamount to a life sentence." In assignment of error number two, defendant contends that the trial court erred in ordering that the sentence for Count 3 run consecutive to the other two sentences. He argues that because the offense in Count 3 occurred within a short period of time and in the vicinity of the other two offenses, and because the trial court noted at the sentencing that the second armed robbery facilitated defendant's flight from the first offenses, the crimes constituted a single transaction or a "common scheme or plan", thereby requiring particular justification for a consecutive sentence.
Article I, Section 20, of the Louisiana Constitution of 1974 prohibits the imposition of excessive punishment. Although a sentence may be within statutory limits, it may violate a defendant's constitutional right against excessive punishment and is subject to appellate review. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). Generally, a sentence is considered excessive if it is grossly out of proportion to the severity of the crime or is nothing more than the needless infliction of pain and suffering. A sentence is considered grossly disproportionate when the crime and punishment, viewed in light of the harm done to society, shocks the sense of justice. State v. Reed, 409 So.2d 266, 267 (La.1982). A trial judge is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed should not be set aside as excessive in the absence of manifest abuse of discretion. State v. Lanclos, 419 So.2d 475, 478 (La.1982).
The trial court gave extensive reasons for the sentences. The court noted that it had taken into consideration that defendant was slightly younger than 16 years of age at the time of the offenses. The court also stated that it had reviewed the pre-sentence investigation report in its entirety and had addressed the impact of the offenses on Ms. Thibodeaux, the victim in Counts 1 and 2. The victim was an elderly woman in her eighties who had lived in her home for over 40 years. She planned to live in that home for the rest of *221 her life, but because of her fear from the offenses, had to move. The court further noted that although defendant was classified as an adult first felony offender, defendant had a lengthy criminal record, including about 18 arrests as a juvenile. Because defendant's past attempts at probation had been unsuccessful, the court believed defendant would commit another crime if probated for the instant offenses. As to defendant's personal history, the court was aware that defendant dropped out of school, had one child under one year, and had never been employed. Again noting defendant's youthfulness, the court found that fact was overshadowed by defendant's criminal record "obtained at such a young age." Furthermore, the court found that defendant, who continued to maintain his innocence, was unable to appreciate his criminal conduct, was a violent and unstable person, and was a danger to the public.
We find that the sentences imposed in Counts 1 and 2 are not excessive. Despite defendant's first-felony status, he has an extensive juvenile record. Also, the trial transcript indicates that defendant made threats of violence against persons during the robberies. As noted by the trial court, defendant's young age, in light of his lengthy criminal record, inability to successfully complete past probation periods, and his violent tendencies, indicate that he needed to be placed in a custodial or correctional environment to prevent further criminal activity. Furthermore, one of the victims in this matter is an elderly woman who was robbed at gunpoint in her home. The PSI, in recommending the maximum sentences, indicates that defendant had previous arrests for armed robbery and that the victims in those offenses were persons age 60 and older.
Thus, assignment of error number one lacks merit.
We also find no merit to defendant's argument in assignment of error number two that the consecutive nature of the sentence imposed in Count 3 is excessive.
Louisiana Code of Criminal Procedure article 883 provides, in pertinent part:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively.
Thus, Article 883 specifically excludes from its scope sentences that the court expressly directs to be served consecutively. See State v. Rogers, 95-1485, p. 11 (La.App. 1 Cir. 9/27/96), 681 So.2d 994, 1000, writs denied, 96-2609, 96-2626 (La.5/1/97), 693 So.2d 749. The imposition of consecutive sentences requires particular justification when the crimes arise from a single course of conduct. However, even if the convictions arise out of a single course of conduct, consecutive sentences are not necessarily excessive. Other factors must be taken into consideration in making this determination. For instance, consecutive sentences are justified when the offender poses an unusual risk to the safety of the public due to his past conduct or repeated criminality. State v. Freeman, 577 So.2d 216, 219 (La.App. 1 Cir.), writ denied, 580 So.2d 668 (1991).
Even assuming arguendo that the imposition of a consecutive sentence in Count 3 required particular justification, we find that the record provides such justification. When reviewing a sentence alleged to be excessive, lacking a factual basis, or lacking a statement of sentencing reasons, if this court concludes that the sentence is otherwise supported by the record, the sentence may be affirmed without a remand for resentencing or supplementation merely for compliance with Louisiana Code Criminal Procedure article. 894.1. State v. Robertson, 94-1379, p. 6 (La.App. 1 Cir. 10/6/95), 671 So.2d 436, 439, writ denied, 95-2654 (La.2/9/96), 667 So.2d 527. Given the disclosure in the trial transcript and the pre-sentence report of sufficient factual details of the offenses *222 and of defendant's past conduct and repeated criminality over an extended period of time, there is no doubt that defendant poses an unusual risk to the public. Thus, it is unnecessary to determine if the trial court's finding that the crimes were separate and not a single course of conduct is correct. The facts of this case overwhelmingly establish that consecutive sentences are justifiable.
This assignment of error is without merit.

INSUFFICIENT EVIDENCE
In assignments of error numbers three and four, defendant contends that the evidence was insufficient to support his convictions in all three counts. Specifically, in regard to his convictions in Counts 1 and 2, defendant argues that the State did not negate the probability of misidentification that defendant was the perpetrator. As to the conviction in Count 3, defendant argues that the conviction rests solely on the unreliable and insufficient identification by the victim.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether, when viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude the State proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt. See La.C.Cr.P. art. 821; State v. Johnson, 461 So.2d 673, 674 (La.App. 1 Cir.1984). The Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standard of review incorporated in Louisiana Code of Criminal Procedure article 821 is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, Louisiana Revised Statute 15:438 provides the fact-finder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. Nevers, 621 So.2d 1108, 1116 (La.App. 1 Cir.), writ denied, 617 So.2d 906 (1993).
Where the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentification. State v. Richardson, 459 So.2d 31, 38 (La.App. 1 Cir.1984). Positive identification by only one witness may be sufficient to support the defendant's conviction. State v. Nevers, 621 So.2d at 1116.
Defendant argues that the identification by Mr. Hayes was unreliable due to the "limited pre-identification description" of the witnesses. He also argues, without specifics, that Mr. Nettles' identification was insufficient. We disagree.
The record shows that in regard to the offenses involving the robbery of Ms. Thibodeaux, Mr. Hayes positively identified defendant in court and during an out-of-court photographic lineup as the man he saw leaving Ms. Thibodeaux's home after a man forcibly entered her home, demanded money and threatened her at gunpoint. Mr. Hayes saw defendant minutes before the robbery and twice after the offense occurred. In the other case, Mr. Nettles testified that he saw defendant directly from about three feet away during the robbery. He also gave a description of the suspect and positively identified defendant from the photographic lineup and in court.
The direct and circumstantial evidence identifying defendant as the perpetrator of the offenses in Counts 1 and 2 was sufficient to negate any reasonable probability of misidentification. Although the victim in these offenses did not identify the perpetrator, there was circumstantial evidence (positive identification by Mr. Hayes of the man seen leaving the residence immediately after the burglary and armed robbery of Ms. Thibodeaux) to show that defendant was the perpetrator. In regard to Count 3, there was direct evidence presented by Mr. Nettles, the victim, that defendant was the perpetrator. Mr. Nettles was only a few feet away from defendant *223 and his attention was focused on the perpetrator. We find the evidence was sufficient to negate any reasonable probability of misidentification.
To the extent that conflicting testimony was presented herein, the guilty verdict indicates the jury accepted the testimony of the State's witnesses and chose not to accept the testimony of the alibi witnesses. As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. Furthermore, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Nevers, 621 So.2d at 1116; State v. Richardson, 459 So.2d at 38.
After a careful review of the record, we believe that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have concluded that the State proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, the elements of each of the offenses and the identity of the perpetrator.
These assignments of error lack merit.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] The record, all the documents in the record, and defendant's brief indicate defendant's name is spelled Dedrick. However, at sentencing, defendant stated that his name was Derrick.