STATE OF LOUISIANA,
v.
WILLIAM THURMAN.
No. 2009 KA 1627.
Court of Appeals of Louisiana, First Circuit.
March 26, 2010.
Not Designated for Publication
SCOTT PERRILLOUX, District Attorney, A. BRADLEY BERNER, Assistant District Attorney, Amite, Louisiana, Counsel for Appellee, State of Louisiana.
PRINTICE WHITE, Baton Rouge, Louisiana, Counsel for Defendant/Appellant, William Thurman.
Before: DOWNING, GAIDRY and McCLENDON, JJ.
McCLENDON, J.
Defendant, William Thurman, was charged by bill of information with one count of aggravated burglary, a violation of LSA-R.S. 14:60. He entered a plea of not guilty.[1] Following a jury trial, defendant was found guilty of the responsive offense of simple burglary, a violation of LSA-R.S. 14:62. He was sentenced to twelve years at hard labor. The state then filed a habitual offender bill of information against defendant, alleging that he was a third-felony habitual offender. Following a hearing, defendant was adjudged a second-felony habitual offender. The court vacated the previously imposed sentence and sentenced him to twenty-four years. Defendant now appeals, designating the following assignments of error:
1. It was a violation of defendant's speedy trial rights to resentence him as a habitual offender over a year after his original sentencing.
2. The trial court committed manifest error in resentencing defendant as a habitual offender after sentencing him for simple burglary.
3. The trial court committed manifest error in not conducting a hearing on the motion to quash.
4. Defendant's conviction and sentence were in violation of the constitutions of the United States of America and the State of Louisiana; specifically, trial counsel's representation during defendant's trial was of such low caliber that it amounted to no representation at all.
5. The original sentence of twelve years imposed herein is wholly and totally illegal and unconstitutional, based on the premise that it was not imposed by the trial judge.
6. The habitual offender sentence is wholly and totally illegal and unconstitutional, based on the premise that the predicate conviction is constitutionally infirm.
7. The verdict is contrary to the law and evidence.
For the following reasons, we affirm the conviction, habitual offender adjudication, and sentence.

FACTS
The victim, Bonnie Ferrara Shelton, testified at trial. She was familiar with defendant because he had been friends with Leroy, her ex-husband. She separated from Leroy in October 2001. Shelton denied having any type of relationship with defendant in 2001 and estimated that she was in his presence only three times that year. She also denied selling drugs to defendant or anyone else.
According to Shelton, on December 16, 2001, at approximately 5:00 a.m., she was awakened by someone calling her name, knocking on her bedroom window, and beating on her door. She recognized defendant's voice and opened her side door. Defendant stated, "Leroy owes me money, pills, I need some money." Shelton told defendant that she did not have any money and asked him to leave. Defendant told her that he was not going anywhere and put his foot in the door to keep her from closing it. Shelton turned to go to her bedroom to get a telephone, and defendant and another man, who had his face covered by a towel, entered Shelton's home. Defendant shoved her down on her bed, and the other man, identified as Ronald Baker, began punching her. Shelton testified that Baker punched her first, but she then felt multiple blows at the same time. Shelton begged for her life and urinated on herself. After she was beaten for approximately ten minutes, the men stopped for a short time, but then beat her again. During the attack, Shelton saw Baker point to the victim's purse and saw defendant take the purse and walk out of the bedroom. Defendant told Shelton, "[D]on't call the law or we will come back and kill you."
The defense claimed that the offense was "a dope deal gone bad," that Shelton had invited defendant to her home, and that Baker was the only individual who had beaten Shelton. The defense presented the testimony of Geraldine A. Stewart, defendant's mother.
Stewart claimed that on December 16, 2001, at approximately 1:15 a.m., Shelton called her and stated that she (Shelton) had invited defendant to her home to pick up thirty dollars. According to Stewart, Shelton stated she used the money to pay a bill before defendant arrived, and he got mad and brought some guy with him that beat her up. Stewart also claimed that Shelton constantly flirted with defendant and told him to come by her house.

HABITUAL OFFENDER ADJUDICATION
In his first assignment of error, defendant argues that the habitual offender process was completed untimely in violation of his constitutional right to a speedy trial.
Although the habitual offender law, LSA-R.S. 15:529.1, does not prescribe a time within which a habitual offender bill of information must be filed, the Louisiana Supreme Court has determined that the district attorney must file the habitual offender bill within a reasonable time. Relying on the language of the statute regarding the filing, as opposed to the completion of the habitual offender proceeding, the supreme court has held that LSA-R.S. 15:529.1 does not allow an indefinite time in which the district attorney may file the multiple offender bill once the necessary information is available. State v. Muhammad, 03-2991, p. 14 (La. 5/25/04), 875 So.2d 45, 54. The determination of whether the hearing is held within a reasonable time hinges on the facts and circumstances of the specific case. Muhammad, 03-2991 at p. 14, 875 So.2d at 55.
The United States Supreme Court has set forth four factors for courts to consider in determining whether or not a defendant's right to a speedy trial has been violated. Those factors are the length of the delay, the reasons for the delay, the accused's assertion of his right to speedy trial, and the prejudice to the accused resulting from the delay. While these factors are neither definitive nor dispositive in the context of a habitual offender proceeding, they are instructive. Muhammad, 03-2991 at pp. 14-15, 875 So.2d at 55.
In the instant case, defendant was convicted of simple burglary on October 22, 2003. Sentencing was set for November 5, 2003. At the hearing on November 5, 2003, the state indicated that it would be filing a habitual offender petition against defendant and moved that sentencing be continued. The defense requested immediate sentencing. The court sentenced defendant to twelve years at hard labor.
On December 10, 2003, the state filed a habitual offender bill of information against defendant. The minutes reflect that the next hearing, on January 14, 2004, which the state alleges was arraignment on the habitual offender bill, was continued, on motion of the defense, to February 10, 2004. On February 10, 2004, defendant denied the allegations of the habitual offender bill of information, and the motion date was set for May 5, 2004.
At the habitual offender hearing on May 5, 2004, the defense moved that the court hold the hearing but take the matter under advisement to allow the defense to move to quash the habitual offender bill. The state presented testimony and introduced exhibits into evidence in support of the habitual offender bill. The court set the matter for July 7, 2004, and gave the state and the defense thirty days to submit memoranda.
On July 7, 2004, the matter was continued to September 8, 2004. On September 8, 2004, defendant filed a motion to quash. Therein, he set forth that he had already been sentenced; a final sentence could not be amended to be more onerous for a defendant; the proceeding was barred by the concept of double jeopardy; and "[a]n Habitual Offender proceeding must take place before or as a part of sentencing." The court adjudged defendant a second-felony habitual offender and deferred sentencing to November 3, 2004. The November 3, 2004 sentencing was continued, on motion of the defense, to November 30, 2004. On November 30, 2004, the court vacated the original sentence and sentenced defendant to twenty-four years.
The habitual offender bill of information was filed against defendant within a reasonable time and there was no violation of his habitual offender "speedy trial" rights. Defendant was notified of the state's intent to pursue habitual offender proceedings against him at the time of the initial sentencing, i.e., prior to serving any sentence in the matter. The state filed a formal habitual offender bill approximately one month later. The habitual offender hearing was conducted less than six months later, and the ruling on defendant's habitual offender status was delayed upon specific request of the defense. Defendant's first complaint against the habitual offender proceeding was by an untimely motion to quash, filed approximately ten months after defendant was given notice of the state's intent to pursue habitual offender proceedings against him.
Defendant claims "there is no argument that [defendant] has been prejudiced by the undue delay of his resentencing." He cites the fact that the state chose to move forward with the original sentencing even though it intended to pursue habitual offender proceedings against him. Defendant's claim, however, is contradicted by the record. At the initial sentencing hearing, the state moved that the matter be continued because it would be filing a habitual offender bill, but the defense moved for immediate sentencing. Further, the fact that defendant was sentenced on the underlying offense prior to being sentenced as a habitual offender does not, in and of itself, establish prejudice. The habitual offender law specifically contemplates that habitual offender sentencing will follow sentencing on the underlying offense. See LSA-R.S. 15:529.1D(1)(a) ("If, at any time, either after conviction or sentence") and LSA-R.S. 15:529.1D(3) ("and shall vacate the previous sentence if already imposed"). Prejudice in connection with the right to speedy trial outside of the habitual offender context is assessed in light of the interest against preventing oppressive pretrial incarceration, the interest in minimizing anxiety and concern of the accused, and most importantly, the interest in limiting the possibility that the defense will be impaired. Barker v. Wingo, 407 U.S. 514, 532, 92 S.Ct. 2182, 2193, 33 L.Ed.2d 101 (1972). Defendant's claim of prejudice is inadequate.
Defendant relies upon State v. Reaves, 376 So.2d 136 (La. 1979), arguing that the court therein found that a delay of less than four months violated the defendant's right to a speedy trial. Reaves was arrested and charged on January 27, 1979, with the possession of a single marijuana cigarette. He was released on bail. He pleaded not guilty and trial was set for February 9, 1979. The trial date was continued "[f]or reasons that do not appear in the record" to March 5, 1979, and then to March 15, 1979. On March 15, 1979, the state moved to continue the matter because its key witness failed to appear, allegedly due to illness. The matter was reset for April 6, 1979. On April 6, 1979, the witness again failed to appear, and the court's effort to have the sheriff bring him to court immediately was unsuccessful. The state again moved to continue the matter, but the court refused. The state responded by nol-prossing the bill and, on the same day, filing a new bill charging the defendant with the same offense. On April 18, 1979, at arraignment on the new bill, the defendant moved to quash, asserting violation of his speedy trial rights. The trial court granted the motion, and the state appealed. Reaves, 376 So.2d at 137.
The court in Reaves found no error in the trial court's ruling. Reaves, 376 So.2d at 139. Applying the Barker factors, the court found that the weight to be ascribed to the length of the delay and the reason for the delay depended on the seriousness and complexity of the offense. The court found that since the case involved only a simple misdemeanor, the constitution would tolerate relatively brief delays. Additionally, the court found that the state had not been diligent in attempting to locate its key witness for at least two of the trial dates. Reaves, 376 So.2d at 138. The court excused the defendant's failure to move for speedy trial sooner because at each postponement, the trial was reset for a fairly near date. Reaves, 376 So.2d at 139. The court also relaxed the necessary showing of prejudice, finding that the requirement of prejudice for a misdemeanor was not as stringent as for a more serious or violent crime. Id.
Reaves is distinguishable from the instant case. The holding in Reaves was heavily influenced by the fact that the offense involved was a misdemeanor possession of a single marijuana cigarette. The offense in this case was far more serious than the offense before the court in Reaves. Thus, even under Reaves, defendant would be required to make a greater showing here under the Barker factors than the defendant in Reaves. Further, Reaves involved the defendant's right to speedy trial following arrest and prior to trial, rather than, as in the instant case, following conviction and prior to the completion of habitual offender proceedings. The risk of prejudice, i.e., the interest against preventing oppressive pretrial incarceration, the interest in minimizing anxiety and concern of the accused, and the interest in limiting the possibility that the defense will be impaired, is greater following arrest and prior to trial than following conviction and prior to the completion of habitual offender proceedings.
This assignment of error is without merit.

HABITUAL OFFENDER SENTENCING
In his second assignment of error, defendant argues that the trial court violated his right against double jeopardy by sentencing him and then "resentencing" him as a habitual offender. He concedes that the jurisprudence does not support his argument, but urges this court to reconsider the issue because the issue "has not been decided for quite some time."
Under Louisiana's habitual offender law, a bill of information alleging that a defendant is a recidivist does not charge a new crime but merely advises the trial court of circumstances, and seeks enhanced punishment following a defendant's most recent conviction. The enhancement of the penalty for habitual offenders convicted of a new felony only addresses itself to the sentencing powers of the trial judge after conviction and has no functional relationship to the innocence or guilt of the instant crime. Thus, a ruling at a multiple offender hearing is not a definitive judgment but merely a finding ancillary to the imposition of sentence. State v. Dorthey, 623 So.2d 1276, 1278-79 (La. 1993) (citations omitted).
Furthermore, because the hearing is not a trial, legal principles, such as res judicata, double jeopardy, the right to a jury trial, and the like, do not apply. Louisiana's habitual offender statute is simply an enhancement of punishment provision. It does not punish status and does not on its face impose cruel and unusual punishment. Dorthey, 623 So.2d at 1279 (citations omitted).
The trial court did not violate defendant's right against double jeopardy by sentencing him as a habitual offender. Double jeopardy does not apply in the habitual offender context. See Dorthey, 623 So.2d at 1279. Defendant offers no authority to challenge the holding of Dorthey and thus provides no support for his argument.
This assignment of error is without merit.

FAILURE TO CONDUCT HEARING ON MOTION TO QUASH
In his third assignment of error, defendant argues that the record "appears silent" as to a hearing being held on the motion to quash. The record shows that, at the beginning of the habitual offender sentencing hearing on November 30, 2004, the court addressed the motion to quash, listened to the arguments of the state and the defense, and ruled against defendant.
This assignment of error is without merit.

INEFFECTIVE ASSISTANCE OF COUNSEL
In this assignment of error, defendant argues pro se that trial counsel rendered ineffective assistance because he (a) failed to object to other crimes evidence when Shelton testified that defendant stated "Leroy owes me money, pills, I need some money"; (b) failed to object to Shelton's "expert" opinion that she recognized defendant's voice; (c) failed to object to prosecutorial misconduct by the state in its opening statement when it sought sympathy from the jury by stating, "[a]s you can imagine, the state of mind [Shelton] was in, at that point in time, lying on her bed, two men had just entered her home, and had beaten her"; (d) failed to conduct a minimum investigation into the matter; and (e) failed to object to the admission into evidence of two photographs of Shelton because the record does not indicate that the photographs depicted her on the day of the offense.
A claim of ineffective assistance of counsel is generally relegated to post-conviction proceedings, unless the record permits definitive resolution on appeal. State v. Miller, 99-0192, p. 24 (La. 9/6/00), 776 So.2d 396, 411, cert. denied, 531 U.S. 1194, 121 S.Ct. 1196, 149 L.Ed.2d 111 (2001).
A claim of ineffectiveness of counsel is analyzed under the two-pronged test developed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to establish that his trial attorney was ineffective, the defendant must first show that the attorney's performance was deficient, which requires a showing that counsel made errors so serious that he was not functioning as counsel guaranteed by the Sixth Amendment. Secondly, the defendant must prove that the deficient performance prejudiced the defense. This element requires a showing that the errors were so serious that the defendant was deprived of a fair trial; the defendant must prove actual prejudice before relief will be granted. It is not sufficient for the defendant to show that the error had some conceivable effect on the outcome of the proceeding. Rather, he must show that but for the counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Further, it is unnecessary to address the issues of both counsel's performance and prejudice to the defendant if the defendant makes an inadequate showing on one of the components. State v. Serigny, 610 So.2d 857, 859-60 (La.App. 1 Cir. 1992), writ denied, 614 So.2d 1263 (La. 1993).
Assignment of error 4(a) is not subject to appellate review. Defense counsel's decision not to object to the challenged testimony may have been strategic. Testimony that defendant claimed that Leroy owed him money and pills was consistent with the defense at trial that Shelton invited defendant to her home as part of a conspiracy with defendant to sell drugs. Allegations of ineffectiveness relating to the choice made by counsel to pursue one line of defense as opposed to another constitute an attack upon a strategy decision made by trial counsel. State v. Allen, 94-1941, p. 8 (La.App. 1 Cir. 11/9/95), 664 So.2d 1264, 1271, writ denied, 95-2946 (La. 3/15/96), 669 So.2d 433. The investigation of strategy decisions requires an evidentiary hearing[2] and, therefore, cannot possibly be reviewed on appeal. Further, under our adversary system, once a defendant has the assistance of counsel, the vast array of trial decisions, strategic and tactical, that must be made before and during trial rest with an accused and his attorney. The fact that a particular strategy is unsuccessful does not establish ineffective assistance of counsel. State v. Folse, 623 So.2d 59, 71 (La.App. 1 Cir. 1993).
Assignment of error 4(b) is without merit. Trial defense counsel did not perform deficiently in failing to object to the alleged "expert testimony" from Shelton. She was not testifying as an expert. Further, defendant's identity as one of the people who entered the victim's home was not at issue. Defendant did not dispute that he entered Shelton's home, and Shelton clearly saw his face and recognized him because he had been Leroy's friend.
Assignment of error 4(c) is also without merit. Trial defense counsel did not perform deficiently in failing to object to the challenged portion of the opening statement. The state did not commit prosecutorial misconduct. Rather, consistent with LSA-C.Cr.P. art. 766, the state set forth the nature of the evidence by which it expected to prove the charge. Moreover, even when the prosecutor's statements and actions are excessive and improper, credit should be accorded to the good sense and fair-mindedness of the jurors who have seen the evidence and heard the arguments. See State v. Bridgewater, 00-1529, pp. 31-32 (La. 1/15/02), 823 So.2d 877, 902, cert. denied, 537 U.S. 1227, 123 S.Ct. 1266, 154 LEd.2d 1089 (2003).
Assignment of error 4(d) is not subject to appellate review. Decisions relating to investigation, preparation, and strategy cannot possibly be reviewed on appeal. State v. Lockhart, 629 So.2d 1195, 1208 (La.App. 1 Cir. 1993), writ denied, 94-0050 (La. 4/7/94), 635 So.2d 1132.
Assignment of error 4(e) is also without merit. Contrary to defendant's claim that the record does not indicate that the photographs in question depicted Shelton on the day of the offense, the record indicates that she specifically testified that the photographs fairly and accurately depicted her on the day of the offense.
This assignment of error is without merit.

ILLEGAL ORIGINAL SENTENCE
In his fifth assignment of error, defendant argues pro se that the original sentence, which was later vacated in connection with the habitual offender proceedings, was illegal because it was imposed by the state rather than by the court. Defendant relies on the transcript of the original sentencing which sets forth the prosecutor's name rather than "the court" next to the sentence. The minutes, however, indicate that the court, rather than the state, sentenced defendant. We pretermit consideration of this issue because error, if any, in the original sentencing was rendered moot when the original sentence was vacated.
This assignment of error is without merit.

HABITUAL OFFENDER PREDICATE OFFENSE
In his next assignment of error, defendant argues pro se that the record does not indicate that he was either convicted or pleaded guilty to predicate #1, his alleged January 9, 1995 guilty plea, under Twenty-first Judicial District Court Docket #71338, to possession with intent to distribute a schedule I controlled dangerous substance. The record indicates that in connection with the habitual offender proceedings, the state introduced into evidence documentation concerning predicate #1. That documentation included a minute entry indicating that defendant pleaded guilty to the challenged predicate offense.
This assignment of error is without merit.

SUFFICIENCY OF THE EVIDENCE
In his last assignment of error, defendant argues pro se that Shelton's account of the incident should be viewed with great suspicion because, even though she claimed she had urinated on her bed during the alleged attack, after the alleged attack, she went to the store instead of showering or changing clothes; because the initial investigative report did not corroborate injury to her eyes; and because she did not indicate that the owner of the store reacted to her injuries when he saw her after the alleged attack.
In reviewing claims challenging the sufficiency of the evidence, this court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also LSA-C.Cr.P. art. 821B; State v. Mussall, 523 So.2d 1305, 1308-09 (La. 1988).
Simple burglary is the "unauthorized entering of any dwelling, ... with the intent to commit a felony or any theft therein, other than as set forth in R.S. 14:60." LSA-R.S. 14:62A. After a thorough review of the record, we are convinced that a rational trier of fact, viewing the evidence presented in this case in the light most favorable to the state, could find that the evidence proved beyond a reasonable doubt, all of the elements of simple burglary and defendant's identity as the perpetrator of that offense. The verdict rendered against defendant indicates the jury accepted the testimony offered against defendant and rejected the testimony offered in his favor. As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. State v. Johnson, 99-0385, p. 9 (La.App. 1 Cir. 11/5/99), 745 So.2d 217, 223, writ denied, 00-0829 (La. 11/13/00), 774 So.2d 971. On appeal, this court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. State v. Glynn, 94-0332, p. 32 (La.App. 1 Cir. 4/7/95), 653 So.2d 1288, 1310, writ denied, 95-1153 (La. 10/6/95), 661 So.2d 464. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Lofton, 96-1429, p. 5 (La.App. 1 Cir. 3/27/97), 691 So.2d 1365, 1368, writ denied, 97-1124 (La. 10/17/97), 701 So.2d 1331. Further, we cannot say that the jury's determinations were irrational under the facts and circumstances presented to them. See State v. Ordodi, 06-0207, p. 14 (La. 11/29/06), 946 So.2d 654, 662. An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. State v. Calloway, 07-2306, pp. 1-2 (La. 1/21/09), 1 So.3d 417, 418 (per curiam).
This assignment of error is without merit.
CONVICTION, HABITUAL OFFENDER ADJUDICATION, AND SENTENCE AFFIRMED.
NOTES
[1] Ronald Baker was also initially charged by the same bill of information with the same offense. The bill was later amended as to Baker, to charge him with one count of theft, a violation of LSA-R.S. 14:67. Baker was not tried with defendant and is not a party to this appeal.
[2] Defendant would have to satisfy the requirements of LSA-C.Cr.P. art. 924, et seq., in order to receive such a hearing.