762 So.2d 717 (2000)
STATE of Louisiana
v.
Lee LUCAS.
No. 99 KA 1524.
Court of Appeal of Louisiana, First Circuit.
May 12, 2000.
*719 Doug Moreau, District Attorney, Baton Rouge by Aaron Brooks, Assistant District Attorney, Baton Rouge, Counsel for Appellee State of Louisiana.
J. Rodney Baum, Baton Rouge, Counsel for Appellant Lee Lucas.
BEFORE: SHORTESS, C.J., PARRO, and KUHN, JJ.
KUHN, Judge.
The defendant, Lee J. Lucas, was charged by bill of information with four counts of possession of a firearm by a convicted felon (counts I, II, III, VI), violations of La. R.S. 14:95.1, one count of armed robbery (count IV), a violation of La. R.S. 14:64, and one count of second degree murder (count V), a violation of La. R.S. 14:30.1. He pled not guilty to all counts. Prior to trial on count V, the State dismissed counts I and IV. Thereafter, in response to a. defense motion, the trial court ordered counts II, III, and VI severed from count V. Following a jury trial on count V, he was found guilty as charged and was sentenced to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. Thereafter, the State dismissed counts II, III, and VI. He now appeals, designating six assignments of error.

SUFFICIENCY
In assignment of error number 5, the defendant contends there was insufficient evidence to support his conviction of second degree murder. He challenges the sufficiency of the State's evidence of his identity as the murderer.
*720 The standard of review for sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude the State proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt. In conducting this review, we also must be expressly mindful of Louisiana's circumstantial evidence test, which states in part, "assuming every fact to be proved that the evidence tends to prove," every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. Where the key issue is the defendant's identity as the perpetrator, rather than whether or not the crime was committed, the State is required to negate any reasonable probability of misidentification. Positive identification by only one witness may be sufficient to support the defendant's conviction. State v. Wright, 98-0601, pp. 2-3 (La.App. 1st Cir.2/19/99), 730 So.2d 485, 486-87, writ denied, 99-0902 (La.10/29/99), 748 So.2d 1157.
When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. Wright, 98-0601 at p. 3, 730 So.2d at 487.
The crime of second degree murder, in pertinent part, "is the killing of a human being: (1)[w]hen the offender has a specific intent to kill or to inflict great bodily harm;...." La. R.S. 14:30.1(A)(1).
Specific criminal intent is that "state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). Though intent is a question of fact, it need not be proven as a fact. It may be inferred from the circumstances of the transaction. Specific intent may be proven by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as a defendant's actions or facts depicting the circumstances. Specific intent is an ultimate legal conclusion to be resolved by the fact finder. State v. Buchanon, 95-0625, p. 4 (La.App. 1st Cir.5/10/96), 673 So.2d 663, 665, writ denied, 96-1411 (La.12/6/96), 684 So.2d 923. Specific intent to kill may be inferred from a defendant's act of pointing a gun and firing at a person. State v. Seals, 95-0305, p. 6 (La.11/25/96), 684 So.2d 368, 373, cert. denied, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997).
The evidence at trial revealed the following. On December 26, 1996, at approximately 2:00 a.m., the victim, Eric Howard, was shot in the chest as he was getting into his vehicle, a black Lexus, at the Howard Johnson hotel in Baton Rouge, Louisiana. The victim had driven to the hotel with Derrick "Sleepy" Collins and Clayton Olinde to pick up Tatonia Haynes. The record established that the vehicle of the person who had shot Howard was "next to" the victim's vehicle during the attack, and the assailant escaped from the scene driving off in a Lexus automobile.
Collins, Olinde, and Haynes, while frantic and excited, drove the victim to the emergency room for treatment. Olinde testified that while in transit to the hospital, Haynes, referring to the defendant, stated, "He was out there bad for doing it," which Olinde understood to mean that defendant had no reason for shooting the victim. In her testimony, Haynes claimed however that it was Collins, who stated, "Man, Lee out there bad," and not her.
While in critical condition at the emergency room, and shortly before undergoing surgery, the victim told two police officers *721 that the defendant had shot him and that the defendant drove a green Lexus.
At trial, Haynes claimed she named defendant as the perpetrator in pre-trial statements because Detective Bauer had told her the defendant was the perpetrator. However, Detective Bauer testified that he never instructed Haynes concerning what to say, never told her to name the defendant as the shooter, and had no idea who the shooter was before speaking to Haynes. Haynes also claimed that in response to questioning by the mother of the victim at the hospital as to who shot her son, she stated, "They said Lee Lucas[.]" The testimony of the mother of the victim was, however, that when Haynes named the defendant as her son's assailant, she gave no indication that she was speaking from anything other than firsthand knowledge. The victim's mother stated that Haynes in no way suggested that she had not seen the shooter and in no way suggested that she did not know the identity of the shooter. Haynes' statements to her at the hospital did not lead the victim's mother to believe that Haynes had been relying on information given to her from a police officer.
At trial, Haynes also testified that there was "maybe" "a possibility" the perpetrator had his hair in braids. At the time of his arrest, the defendant's hair was in braids, or plaits, and he admitted his hair was in plaits on December 26, 1996.
Additionally, Haynes testified the perpetrator was in a Lexus automobile. She claimed not to remember the color of the Lexus, subsequently contended only to know that the vehicle was a Lexus because of what she heard "on the street[,]" but then was able to describe the shooter's vehicle as being "one just like [the victim's (a Lexus)]."
A bullet was recovered from the victim's body. Charles R. Watson, an expert in ballistics examination, testified that the bullet that killed the victim had been discharged from a firearm with polygonal rifling. Based on the published literature, the only firearms Watson could identify as having polygonal rifling were Glock firearms.
Defendant was arrested in Chicago, Illinois on January 16, 1997. Although he claimed to have been in Chicago visiting a sick relative, the return date on his airplane tickets was January 15, 1997. Additionally, the airline tickets were in the name of "Bruce Hills," and defendant had Bruce Hills' driver's license on his person at the time of his arrest. According to defendant, Hills purchased the tickets for him because defendant had no form of identification. Hills testified that he purchased the tickets for defendant. When asked why defendant had his driver's license on his person, Hills indicated that he had forgotten to get it back from defendant.
Defendant claimed that he did not presently own the green Lexus he referred to in a July 13, 1997 taped statement, but admitted that he had access to his own green Lexus. However, Detective Vick, who was present at the statement, testified that defendant had claim ownership of the green Lexus he referred to on tape.
During cross-examination, defendant accused the prosecutor of attempting to pressure him into accepting a forty year sentence for robbing his uncle, Willie Carter. According to defendant, the "robbery" stemmed from an attempt by Carter who, while under the influence of drugs, tried to give money to defendant. Defendant conceded however, that his uncle had summoned the police and had filed charges over the matter. When the State called Carter on rebuttal at trial, he claimed that he could not recall whether he had advised police that defendant had a weapon when he spoke to police on December 24, 1996. When shown a copy of the report, Carter stated that he had falsely advised police that defendant had a Glock 9 millimeter pistol and claimed not to recall stating that defendant had a green Lexus.
*722 Defendant's alibi for his whereabouts was that he had gone to see a girlfriend in Lafayette on December 24, 1996, returned to his mother's house in Baton Rouge at approximately 8:15 a.m. on December 25, 1996, and remained there until the next morning. He stated that he remained at his mother's house except when he delivered gifts to family members between approximately 4:00 p.m. and 9:00 p.m. on December 25, 1996. The prosecutor pointed out that the incident involving the defendant's uncle, Willie Carter, occurred on December 24, 1996, which is when defendant claimed to have been in Lafayette. In response, defendant explained that the incident with his uncle occurred prior to his departure for Lafayette in the early morning hours of December 24, 1996. Defendant denied having either a 9 millimeter Glock or a green Lexus at the time of the incident with his uncle. Defendant also denied having killed the victim, Eric Howard.
Eula Jackson, defendant's mother, testified that defendant was asleep in her daughter's room at her house at the time of the murder. Jackson stated that she owned a 1999 Suburban and a "Town Car." Jackson was shown State Exhibit # 17, an August 7, 1997 photograph of a woman exiting a red Cadillac parked next to a green Lexus, which she identified as depicting her getting out of a Cadillac parked next to her Lexus. When asked whether defendant drove her Lexus, she answered, "All the time. He driveshe drives all my cars." Ranata Booker, the victim's sister, testified that defendant was "supposedly sleeping" in her bed at the time of the murder.
Tommy Lafavre, a salesman with Beverly Bills Motor Cars, testified that in July of 1997, defendant bought a blue Lexus which did not need a "paint job." Lafavre stated that defendant had put the vehicle's title in the name of his mother, Eula Jackson. Lafavre recalled that defendant brought the vehicle back a couple of weeks later to show off its new green paint. He conceded, however, that he had not checked the VIN number of the green Lexus and so could not be certain it was the same as that of the blue Lexus.
The jury in the instant case voted unanimously to convict the defendant of second degree murder. That verdict reflects the jury's acceptance of the testimony of the State's witnesses and rejection of the testimony of the defendant and his witnesses. As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Johnson, 99-0385, pp. 9-10 (La. App. 1st Cir.11/5/99), 745 So.2d 217, 223.
A thorough review of the record convinces us that the evidence presented herein, viewed in the light most favorable to the State, proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of the offense of second degree murder and the defendant's identity as the perpetrator of that offense. Accordingly, this assignment of error is without merit.

DYING DECLARATIONS
In assignment of error number 1, the defendant contends the trial court erred in allowing the victim's statements to be admitted at trial as dying declarations. He argues that the evidence does not show that the victim made his statements while believing his death was imminent.
Louisiana Code of Evidence Article 804, in pertinent part, provides:
B. Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

*723 . . .
(2) Statement under belief of impending death. A statement made by a declarant while believing that his death was imminent, concerning the cause or circumstances of what he believed to be his impending death.
Prior to trial, the State filed a motion in limine seeking a ruling on the admissibility of certain statements from the victim as dying declarations. At the hearing on the motion, the State introduced into evidence the victim's death certificate, his autopsy report, and his medical records. These documents reflected that the victim died on January 15, 1997, from sepsis and pneumonia resulting from a gunshot wound to his left chest which injured three of his ribs and his liver.
The State also presented testimony from Dr. John Jones, the victim's treating physician when he arrived at the Baton Rouge General Hospital Emergency Room at 2:30 a.m. on December 26, 1996. Upon arrival, the victim was unresponsive, sweating profusely, and in severe distress. He had suffered a gunshot wound through his lower chest which the doctor characterized as "a serious critical injury." He had a pulse, but was not breathing very well on his own. He was resuscitated and his condition improved "dramatically," i.e., his blood pressure and pulse stabilized, and he was scheduled for surgery. He was advised that he had suffered a gunshot wound, that a chest tube would have to be inserted into his chest wall to drain out accumulated blood and air, and that he was going to have to have surgery. He went to the operating room at 3:52 a.m. During surgery, he "flatlined," i.e., his heart stopped beating, but he was resuscitated again.
The State also presented testimony from Baton Rouge City Police Officer Carl Dunn. Officer Dunn was working extra duty detail at the Baton Rouge General when the victim arrived. Upon arrival, the victim had "blood all over him." He was bleeding, unconscious, and not moving. Officer Dunn helped the victim into a wheelchair and took him to the trauma room. Thereafter, Officer Dunn accompanied Detective Bauer when he questioned the victim concerning his knowledge of who had shot him. The questioning occurred prior to the victim's surgery. The victim, speaking through an oxygen mask, answered that Lee Lucas had shot him. The victim was "serious" as he spoke and struggled to speak. Detective Bauer asked the victim if he was sure, and the victim stated "yeah[,]" shaking his head. As the police officers turned to leave the victim, the victim caught their attention by stating "hey[.]" Detective Bauer asked the victim if he had something else to say, and the victim responded, "Yeah, he drives a green Lexus."
Baton Rouge City Police Sergeant Keith Bauer also testified at the hearing. He corroborated Officer Dunn's testimony concerning the victim's statements. He stated that the victim was in pain as he spoke, could not speak in a normal tone, and spoke softly. He added that the victim was aware he was going into surgery at the time he made his statements because he (Sergeant Bauer) had told him "that [the victim] was seriously injured and that he was going to have to be going to surgery." Sergeant Bauer was unable to further question the victim during the period between the completion of his surgery and his death because the victim was unconscious on those instances when Sergeant Bauer called on him.
Finding that the victim "was aware of his condition and had a sense of impending death under such a serious injury," the trial court held the victim's statements concerning the identity of his assailant and the vehicle he drove to be admissible as dying declarations. The defendant objected to the court's ruling, assigned error, and filed for supervisory review of the ruling in both this court and the Louisiana Supreme Court. However, the defendant's writ applications were denied. State v. Lucas, 98-2805 (La.App. 1st *724 Cir.1/22/99), writ denied, 99-0323 (La.2/4/99), 737 So.2d 732.
There was no error. The magnitude of the victim's injury, the circumstances surrounding the declarations, and the victim's death establish an inferential basis for finding that the victim was in fact, and believed himself to be, near death. See State v. Penny, 486 So.2d 879, 882 (La. App. 1st Cir.), writ denied, 489 So.2d 245 (La.1986). Accordingly, this assignment of error is without merit.

DISCOVERY VIOLATION
In assignment of error number 2, the defendant contends the trial court erred in allowing Blake Patterson to give identification testimony regarding a green Lexus automobile present at the time and scene of the shooting. He argues the testimony should have been excluded because the State failed to comply with La.C.Cr.P. art. 727.
Prior to trial, the State moved for reciprocal discovery, seeking inter alia, to be informed of the defendant's intention to offer a defense of alibi to the charges arising out of the incident occurring on "2) December 26, 1996 after 10:00 p.m. at 2056 North 3rd Street, Baton Rouge, Louisiana (counts 2 & 5)[.]" The defense advised the State:
5.
Defendant has an alibi defense to the count of second degree murder. Defendant was present at his mother's home located at 347 South 20th, Baton Rouge, Louisiana. His mother Eula Booker, and sister, Renata Booker, were present.
Seven days prior to trial, the State filed its response to the alibi notice, in pertinent part, stating:
1. All witnesses on the state's witness list, specifically Latonya (sic) Haynes, Clayton Olinde, and Derrick Collins. The victim gave a dying declaration. Certain hotel personnel saw the shooting and the vehicle involved. The defendant's own words admit possession of the Lexus (taped).
At trial, the State presented testimony from Blake Patterson, a security guard at the Howard Johnson hotel where the crime was committed at the time the victim was shot. Patterson testified that after hearing two gunshots, he saw two Lexus automobiles, one was a dark color, either black or navy, and the other was green. The defense objected to the State's failure to notify it that Patterson could identify a green Lexus and moved for a mistrial or, in the alternative, to exclude Patterson's testimony. The trial court denied the defense motions, and the defense assigned error. Upon more particularized questioning, Patterson conceded that he was not certain of the color of the Lexus automobiles he saw at the hotel following the shooting, although he indicated the darker of the two was the one that transported the victim after he had been shot.
Louisiana Code of Criminal Procedure Article 727, in pertinent part, provides:
A. Upon written demand of the district attorney stating the time, date, and place at which the alleged offense was committed, the defendant shall serve within ten days, or at such different time as the court may direct, upon the district attorney a written notice of his intention to offer a defense of alibi. Such notice by the defendant shall state the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom he intends to rely to establish such alibi.
B. Within ten days thereafter, but in no event less than ten days before trial, unless the court otherwise directs, the district attorney shall serve upon the defendant or his attorney a written notice stating the names and addresses of the witnesses upon whom the state intends to rely to establish the defendant's *725 presence at the scene of the alleged offense and any other witnesses to be relied on to rebut testimony of any of the defendant's alibi witnesses.
. . .
D. Upon the failure of either party to comply with the requirements of this rule, the court may exclude the testimony of any undisclosed witness offered by such party as to the defendant's absence from or presence at, the scene of the alleged offense. This rule shall not limit the right of the defendant to testify in his own behalf.
E. For good cause shown, the court may grant an exception to any of the requirements of Subsections A through D of this Section.
A trial court should consider the following factors in determining whether or not to exercise its discretionary power to exclude undisclosed evidence concerning the defendant's alibi: (1) the amount of prejudice that resulted from the failure to disclose, (2) the reason for nondisclosure, (3) the extent to which the harm caused by nondisclosure was mitigated by subsequent events, (4) the weight of the properly admitted evidence supporting the defendant's guilt, and (5) other relevant factors arising out of the circumstances of the case. State v. Rogers, 95-1485, p. 5 (La.App. 1st Cir.9/27/96), 681 So.2d 994, 997, writs denied, 96-2609 (La.5/1/97), 693 So.2d 749, 96-2626 (La.5/1/97), 693 So.2d 749, citing, State v. Smith, 430 So.2d 31, 36 (La.1983), citing, United States v. Myers, 550 F.2d 1036, 1043 (5th Cir.1977). Federal Rule of Criminal Procedure 12.1 (upon which La. C.Cr.P. art. 727 is modeled) was intended to prevent prejudicial surprise to the parties and to prevent the need for continuances which arise when one side introduces unexpected testimony at trial. Myers, 550 F.2d at 1042.
There was no abuse of discretion in denying the defense motions. The defendant suffered no prejudicial surprise from Patterson's testimony. The State's response to the alibi notice put the defense on notice that the State would attempt to tie the defendant to the crime through his Lexus automobile. Additionally, Patterson's testimony was equivocal on the issue of the color of the Lexus vehicles he saw at the crime scene. Further, any harm from the nondisclosure of Patterson to the defense was mitigated by the State's presenting Patterson's testimony as part of its case-in-chief, thus providing the defense full opportunity to cross-examine Patterson and present its own witnesses to challenge the accuracy of his testimony. Moreover, the State established that a green Lexus was at the crime scene independently of Patterson's testimony (through the victim's own dying declaration) and the evidence of the defendant's guilt was substantial.[1] Accordingly, this assignment of error is without merit.

PRIOR INCONSISTENT STATEMENTS
In assignment of error number 3, the defendant contends the trial court erred in allowing prior inconsistent statements of witnesses to be used at trial for purposes other than extrinsically attacking the credibility of the witnesses. He argues the trial court failed to instruct the jury concerning transcripts and tapes of pre-trial statements of Tatonia Haynes used to impeach her testimony at trial and failed to instruct the jury concerning Willie Carter's December 24, 1996 criminal complaint used to impeach his testimony at trial. He also complains of the State's reference to Haynes' pre-trial statements during closing argument. The State responds that the defendant did not contemporaneously object to the alleged errors at trial, and thus, failed to preserve the issues for appeal.
After Tatonia Haynes testified at trial inconsistently with her pre-trial taped accounts *726 of the offense, the State moved to play "the tape." Defense counsel not only did not contemporaneously object, he stated, "I have reviewed the writtenthe transcribed tape, and the excerpts and versions, and I have no objection to that version being played to the jury."
On rebuttal to the defense case, the State called defendant's uncle, Willie Carter. Carter conceded that he made a police report concerning "an event" which occurred on December 24, 1996. When Carter claimed either not to know or not to recall whether he told police that the defendant had a weapon in that report, the State refreshed his memory with the report and then questioned him concerning allegations made in the report that the defendant had a Glock 9 millimeter pistol and a green Lexus on December 24, 1996. The defense did not object.
The State also referenced Haynes' pretrial statements during closing without objection from the defense.
An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. La. C.Cr.P. art. 841(A); State v. Morris, 96-1008, p. 11 (La.App. 1st Cir.3/27/97), 691 So.2d 792, 799, writ denied, 97-1077 (La.10/13/97), 703 So.2d 609.
Moreover, a review of the record reveals that the trial court instructed the jury, in pertinent part, as follows:
The testimony of a witness may be discredited by showing that the witness made a prior statement which contradicts or is inconsistent with his or her present testimony. Such prior statements are admitted only to attempt to discredit the witness, not to show that the statements are true.
Statements made by the attorneys at any time during the trial are not evidence. In the opening statements, the attorneys were permitted to tell you the facts they expected to prove. In closing arguments, the attorneys were permitted to present for your consideration their contentions regarding what the evidence has shown or not shown and what conclusions they think may be drawn from the evidence. The opening statements and closing arguments are not to be considered as evidence.
Accordingly, we find no merit in this assignment of error.

OTHER CRIMES EVIDENCE
In assignment of error number 4, the defendant contends the trial court erred in allowing Tatonia Haynes to testify regarding alleged threats made against her by the defendant. He complains that the court failed to instruct the jury to disregard the statement as inadmissible evidence.
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case, the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by La. C.Cr.P. arts. 770 or 771. La.C.Cr.P. art. 775. The determination as to whether or not a mistrial should be granted under La.C.Cr.P. art. 775 is within the sound discretion of the trial court, and a denial of a motion for mistrial will not be disturbed on appeal absent an abuse of discretion. State v. Young, 569 So.2d 570, 583 (La. App. 1st Cir.1990), writ denied, 575 So.2d 386 (La.1991).
Louisiana Code of Criminal Procedure Article 770(2) provides for a mandatory mistrial when a remark, within the hearing of the jury, is made by the judge, the district attorney, or a court official, and such remark refers to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible. However, remarks by witnesses fall under the discretionary mistrial provisions of La.C.Cr.P. art. 771.
Louisiana Code of Criminal Procedure Article 771, in pertinent part, provides:
In the following cases, upon the request of the defendant or the state, the *727 court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
. . .
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
A mistrial pursuant to the provisions of article 771 is at the discretion of the trial court and should be granted only where the prejudicial remarks of the witness make it impossible for the defendant to obtain a fair trial. See State v. Dixon, 620 So.2d 904, 911 (La.App. 1st Cir.1993). The jurisprudence interpreting La.C.Cr.P. art. 771(2) has held that unsolicited and unresponsive testimony is not chargeable against the State to provide a ground for mandatory reversal of a conviction. State v. LeBlanc, 618 So.2d 949, 960 (La.App. 1st Cir.1993), writ denied, State ex rel. LeBlanc v. State, 95-2216 (La.10/4/96), 679 So.2d 1372.
During the State's questioning of Tatonia Haynes, the following exchange occurred:
Q. Let me ask the questions if I could, okay. Did you ever tell [Detective Bauer] what you said here wasn't the truth?
A. He never asked was it the truth.
Q. What did he ask?
A. He asked had anyone been harassing me, had anyone ever offered me money not to tell that it was Lee Lucas. He asked me questions like that. I told him, No, no one ever offered me any money. I told him that I was hearing people say what Lee Lucas
[Defense counsel]: Objection
A. was going to do
[Defense counsel]: Objection, objection.
A. to me.
[Trial court]: Ma'am, hold up, hold up. When they make an objection, stop talking. Sustained.
A thorough review of the record reveals defense counsel requested neither admonition nor mistrial following the court's sustaining of his objection to Haynes' testimony. If an objection is sustained, the defendant cannot on appeal complain of the alleged error unless at the trial level he had requested and had been denied either admonition to disregard or a mistrial. State v. Robertson, 97-0177, p. 42 (La.3/4/98), 712 So.2d 8, 40, cert. denied, 525 U.S. 882, 119 S.Ct. 190, 142 L.Ed.2d 155 (1998). This assignment of error is without merit.

INEFFECTIVE ASSISTANCE OF COUNSEL
In assignment of error number 6, the defendant contends it was ineffective assistance of defense counsel to fail to move for reconsideration of sentence. He argues counsel's failure to so move waived his right to a sentence that was not cruel and unusual and the right to appeal, seeking redress for the excessive sentence.[2]
Pursuant to La. R.S. 14:30.1(B), the defendant was sentenced to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. Defense counsel did not move for reconsideration of sentence, but did timely orally move for appeal in open court. See La. C.Cr.P. art. 914(A).
*728 A claim of ineffectiveness of counsel is analyzed under the two-pronged test developed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to establish that his trial attorney was ineffective, the defendant must first show that the attorney's performance was deficient, which requires a showing that counsel made errors so serious that he was not functioning as counsel guaranteed by the Sixth Amendment. Secondly, the defendant must prove that the deficient performance prejudiced the defense. This element requires a showing that the errors were so serious that defendant was deprived of a fair trial; the defendant must prove actual prejudice before relief will be granted. It is not sufficient for defendant to show that the error had some conceivable effect on the outcome of the proceeding. Rather, he must show that but for the counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Further, it is unnecessary to address the issues of both counsel's performance and prejudice to the defendant if the defendant makes an inadequate showing on one of the components. State v. Serigny, 610 So.2d 857, 859-60 (La.App. 1st Cir.1992), writ denied, 614 So.2d 1263 (La.1993).
It is well settled that the mandatory imposition of a sentence of life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence for second degree murder does not constitute cruel and unusual punishment. See State v. Parker, 416 So.2d 545, 552 (La.1982). Thus, the defendant suffered no prejudice from his defense counsel's failure to challenge his sentence on that basis. Accordingly, this assignment of error is without merit.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] See discussion, supra, of assignment of error number 5.
[2] The defendant does not make a particularized challenge to his sentence.