775 So.2d 670 (2000)
STATE of Louisiana
v.
Kendrick JOHNSON.
No. 00 KA 0680.
Court of Appeal of Louisiana, First Circuit.
December 22, 2000.
*674 Doug Moreau, District Attorney, Dana Cummings, Asst. District Attorney, Baton Rouge, LA, Counsel for State of Louisiana.
Kevin Monahan, Baton Rouge, LA, Counsel for Kendrick Johnson.
Before: LeBLANC, KUHN and MOORE[1]., JJ.
LeBLANC, J.
Kendrick James Johnson was indicted in count 1 with armed robbery, a violation of La. R.S. 14:64, in counts 2 and 3 with attempted second degree murder, a violation of La. R.S. 14:27 and 14:30.1, and in count 4 with possession of a firearm by a convicted felon, a violation of La. R.S. 14:95.1. Prior to trial, the court severed count 4, and the state eventually dismissed that count. Following trial by jury, defendant was found guilty as charged in counts 1, 2 and 3. The court sentenced defendant on count 1 to serve a term of sixty years imprisonment at hard labor, and on counts 2 and 3 to serve fifty years at hard labor on each count, all terms to be served without benefit of parole and to run concurrently. Defendant has appealed, urging five assignments of error.

FACTS
On May 26, 1998, Wolfgang and Uta Mensch were touring Louisiana when they stopped at the Budgetel Inn in Baton Rouge at about 8:30 or 9 p.m. After registering for a room, they drove their car to the parking lot. The parking lot was well lighted. While Dr. Mensch put the couple's luggage onto a luggage cart, Mrs. Mensch started walking to the hotel entrance. A man put his hand on her shoulder, and she turned to see the man holding a gun. Mrs. Mensch was shocked to see a gun because she was not accustomed to seeing such weapons in her native country of Germany. The man told Mrs. Mensch to give him her bag, and he took her handbag and camera bag.
When Dr. Mensch closed the trunk, he saw the assailant. Dr. Mensch immediately ran to the aid of his wife, attempting to knock the weapon out of the man's hand. The man started running away, and Dr. Mensch followed. Initially Mrs. Mensch ran to hide behind a truck. Curious about what was happening to her husband, she started following her husband and called out her husband's name to get his attention. After they had run "approximately fifty to twenty feet," the man fired a shot. *675 Dr. Mensch heard the sound but did not realize it was a gunshot. Dr. Mensch testified that his wife was behind him when the first shot was fired.
Dr. Mensch continued pursuing the man, and he got to about one meter away from the man. The man fired again, this time striking Dr. Mensch in the left side. Dr. Mensch realized he had been shot and was unable to continue any further. Mrs. Mensch came to her husband's aid, and she saw the assailant jump over some grass to get to the area of a nearby hotel. Mrs. Mensch observed a second suspect in that area. As a result of injuries sustained in the shooting, Dr. Mensch required surgery to remove his spleen and repair his colon and an additional surgery to remove the bullet. He spent twelve days in the hospital in Baton Rouge and additional time in the hospital when he returned to Germany.
Charles Porter, the hotel's manager, and his wife, Margo Porter, heard the shooting. They looked out of their third floor apartment and observed the vehicle used by the assailant. In the call Mrs. Porter made to the 911 operator, she described the car as being a dark red, "squared off' Chevrolet, with a luggage rack on the back. At trial, Mrs. Porter testified that the vehicle was a big, older model car that looked pretty well kept. The car's luggage rack was unusual, going sideways across the trunk. Mrs. Porter described the car as being a red or maroon Oldsmobile, Buick or Cadillac. Mr. Porter testified that the vehicle was a dark-colored (dark brown or maroon) Cadillac or Oldsmobile.
At the hospital, Dr. and Mrs. Mensch met with a sketch artist to help the police draw a sketch of the suspect. After a description of the assailant was broadcast, a concerned citizen called the sheriffs office and said John Fitzgerald Cole was the man who robbed Mrs. Mensch. The police showed Mrs. Mensch a photographic display containing Cole's picture, but Mrs. Mensch did not see the assailant's picture in the display. She told the officer she had no doubt the robber was not in the pictures. The police received a call from another concerned citizen. Using the information provided in that conversation, the officers prepared a second photographic display, this time containing defendant's picture. Without any hesitation, Mrs. Mensch selected defendant's picture. The officers did not show the photo display to Dr. Mensch. Dr. Mensch told the officers he wanted to rely on his wife's identification of the suspect. Dr. Mensch saw only a profile view of the suspect, and he told the officers he was not confident of his ability to identify the suspect. At trial, both Dr. and Mrs. Mensch confidently identified defendant in court as being the assailant.
After Mrs. Mensch selected defendant's picture, the sheriffs office secured a warrant for defendant's arrest. On June 4, an officer located defendant's car at an apartment complex. The car was a 1985 brown Cadillac Deville. The luggage rack had been removed from the trunk of the vehicle. At the request of the sheriffs office, the apartment manager called the apartment associated with the owner of the car, telling the man who answered the phone to move the car so the apartment could paint lines in the parking lot. The officers made this request in an effort to get the occupant safely out of the apartment. The officers waited about ten minutes, but the man never left the apartment. The officers announced their presence outside the apartment, pounded on the door, and ordered that the door be opened. Nobody came to the door, and the officers secured authorization from a judge to enter the apartment. Using a key, the officers opened the door. Once inside, they found the door barricaded by a large coffee table. The officers forced their way in and found defendant sitting on the sofa with his hands between his legs. The officers had to tell defendant several times to put up his hands before he finally complied with the request. The officers then arrested defendant without any further resistance.
*676 Ywkinee Landry was the actual tenant for the apartment. She and defendant had dated from time to time and were engaged at the time of the trial. She arrived at her apartment while the deputies were present, and she gave them consent to search her apartment. None of the items stolen during the robbery were found in her apartment. Ms. Landry and another woman defendant dated both testified that defendant took good care of his car.
The police secured a search warrant to search defendant's car. During the search, the police found the disassembled luggage rack in the trunk. One of the officers testified that the rack appeared to have been recently removed. There was no rust around the holes where the rack had been attached, and the paint was shiny under the area where the rack had been. Pictures of the car, with the luggage rack attached, were found in the car during the search. None of the items stolen during the robbery were found in the vehicle.

SUBPOENA DUCES TECUM FOR RECORDS OF POLICE DEPARTMENT
In the first assignment of error, defendant maintains the court erred when it quashed a defense subpoena served on the robbery division of the Baton Rouge Police Department requesting information about ongoing parking lot robbery investigations. Defendant claims the court's ruling impermissibly limited his constitutional right to present a defense.
The subpoena was issued on the first day of testimony, and it directed a particular detective to bring to court at 9 a.m. on the next day "any and all reports of parking lot robberies within the last eighteen (18) months in the City of Baton Rouge where two (2) perpetrators were indicated and driving a late model motor vehicle." The police department filed a motion to quash the subpoena, arguing the subpoena request sought irrelevant information and gathering the information would be an unreasonable burden. The detective estimated that fulfilling the request would take about two days and would require the review by hand of about 1500 police reports.
Defendant alleges the district court quashed the subpoena. However, the record does not contain a copy of any ruling by the district court on the motion to quash, and the minutes of the court do not indicate the matter was addressed by the court. The record also does not contain a copy of any written request by the defense for the subpoena duces tecum. Only that which is in the record may be reviewed by an appellate court on appeal. See State v. Robertson, 518 So.2d 579, 585 (La.App. 1 Cir.1987), writ denied, 523 So.2d 227 (1988).
Furthermore, any ruling by the district court that might have granted the motion to quash would not appear to be in error. Article 732 of the Code of Criminal Procedure provides authority for the issuance of a subpoena duces tecum:
A subpoena may order a person to produce at the trial or hearing, books, papers, documents, or any other tangible things in his possession or under his control, if a reasonably accurate description thereof is given; but the court shall vacate or modify the subpoena if it is unreasonable or oppressive.
Article 732 does not authorize the disclosure of documents for discovery purposes or as part of a "fishing expedition." Instead, article 732 provides for the production of the documents at a "trial or hearing," and the court is required to vacate or modify the subpoena if it is unreasonable or oppressive.
In this case, the subpoena was not issued until the first day of testimony, and it gave the police department less than twenty-four hours to review all of the armed robbery reports in Baton Rouge for an eighteen month period to determine the number of perpetrators, the place of the offense, and the description of the getaway vehicle in these other robberies. Considering *677 the short period of time and the nature of the request, the district court would have been justified in determining the subpoena was unreasonable or oppressive.
For these reasons, we find no merit in the assignment of error.

PHOTOGRAPHIC IDENTIFICATION
In assignment of error number 2, defendant contends the court erred when it denied defendant's motion to suppress the photographic identification. Defendant claims his head was larger and his picture was brighter than the other pictures, and, as a result, the photographic array was suggestive and led to the likelihood of his misidentification by Mrs. Mensch.
A defendant attempting to suppress an identification must prove the identification was suggestive, and that there was a likelihood of misidentification as a result of the identification procedure. State v. Reed, 97-812, p. 4-5 (La.App. 1 Cir. 4/8/98), 712 So.2d 572, 576, writ denied, 98-1266 (La.11/25/98), 729 So.2d 572. An identification procedure is suggestive if it unduly focuses a witness's attention on the suspect. Strict identity of physical characteristics among the persons depicted in a photographic array is not required; however, there must be sufficient resemblance to reasonably test the identification. The question for a reviewing court is to determine whether the procedure is so conducive to irreparable misidentification that due process was denied. State v. Bright, 98-0398, p. 10 (La.4/11/00), 776 So.2d 1134, 1141.
Even if the identification is considered suggestive, that alone does not indicate a violation of the defendant's right to due process. It is the likelihood of misidentification that violates due process, not merely the suggestive identification procedure. A trial court's determination of the admissibility of identification evidence is entitled to great weight and will not be disturbed on appeal in the absence of an abuse of discretion. In determining if the court's ruling on the motion to suppress identification was correct, we are not limited to the evidence adduced at the hearing on the motion. We may consider all pertinent evidence presented at the trial of the case. Furthermore, even if it is established that a pretrial identification of an accused is the product of impermissible suggestion, an in-court identification is admissible if it has an independent basis. State v. Reed, 97-812 at 5, 712 So.2d at 576.
We have carefully examined the six-picture photo display at issue. The pictures are all the same size. Defendant's picture is on the bottom row, and his head is larger than the other two pictures on the bottom row but the same size as the three pictures on the top row. The differences in the sizes of the heads is explained by the fact the pictures of defendant and the three men on the top row show only the head and neck for each man and are more of a close-up view than the other two pictures (which include the upper shoulders for those two men). Defendant claims his picture and the other two pictures on the bottom row are brighter than the three pictures on the top row. Any difference in brightness is slight and appears to be the result of shading and lighting, not a discernable difference in skin color.
The officers who prepared the photo display used a computer to assist them in selecting pictures of similar black men. Before Mrs. Mensch viewed the array, the officer told her the suspect may or may not be in the pictures. The officer placed the display in front of Mrs. Mensch, told her to take her time, and did not suggest which picture she should select. After viewing the display and carefully considering the testimony of Mrs. Mensch and the officers concerning the selection of the pictures for the lineup and the manner in which it was conducted, we are unable to discern any suggestiveness in the pictures *678 or in any of the procedures used in conducting the lineup.
Even assuming, arguendo, that the out-of-court identification was somehow suggestive, defendant has failed to prove a likelihood of misidentification. The following factors are considered in determining if a lineup is reliable: (1) the witness' opportunity to view the defendant at the time the crime was committed; (2) the degree of attention paid by the witness during the commission of the crime; (3) the accuracy of any prior description; (4) the level of the witness' certainty displayed at the time of the identification; and (5) the length of time elapsed between the crime and the identification. Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); Reed, 97-812 at 6, 712 So.2d at 576.
During the robbery, Mrs. Mensch looked directly into the face of the assailant, although for only a brief period of time. The robbery occurred at night, but Mrs. Mensch described the lighting as being bright enough to read the newspaper. After the offenses, Mrs. Mensch gave the police a description of the suspect, including the robber's race, sex, size, and eyes. She told the officers she would be able to recognize the man and would never forget his face. The photo display was shown to Mrs. Mensch on June 3, eight days after the offenses. When Mrs. Mensch viewed the display, she immediately pointed to defendant's picture. Earlier, Mrs. Mensch viewed a display containing the picture of a different suspect. With confidence, she told the officers at that time that the robber's picture was not in that display. During the trial, Mrs. Mensch identified defendant in court, and she expressed confidence in making the identification. In view of these facts, the out-of-court identification was clearly reliable, and the in-court identification also was admissible, without doubt having had an independent basis.
This assignment lacks merit.

CROSS-EXAMINATION OF POLICE OFFICER
In the third assignment, defendant argues the court erred when it sustained the state's hearsay objection and refused to allow the defense to question Deputy Stephen Gallo about discrepancies in the descriptions of the assailant and the getaway vehicle.
Deputy Gallo testified that he and his partner were the first officers to arrive at the scene, arriving no more than four minutes after being dispatched. Before losing consciousness, Dr. Mensch gave Deputy Gallo a brief description of the assailant. Shortly afterward, emergency medical personnel arrived, and Deputy Gallo stayed with Dr. Mensch while his partner located and secured the scene of the robbery. At some point after the emergency personnel arrived, Deputy Gallo spoke to Margo Porter (the manager's wife and the person who placed the 911 call). Deputy Gallo also spoke to three other witnesses, Ray Gilbert, Barry Brown and Mr. McCarroll. On cross-examination, Deputy Gallo testified that the witnesses gave him descriptions of the assailant and the vehicle. Deputy Gallo testified about the description Margo Porter gave him for the vehicle. When the defense asked Deputy Gallo for the physical description of the assailant provided by Margo Porter, the state objected on the ground such evidence would be hearsay. The court sustained the objection, and defense counsel said he would call Deputy Gallo as part of the defense case. When the defense asked if any of the witnesses described the vehicle as being a brown Cadillac, the state's hearsay objection again was sustained.
Defendant did not proffer any testimony by Deputy Gallo concerning the descriptions provided by the witnesses. To preserve the right to appeal a trial court ruling which excludes evidence, the defendant must make the substance of the evidence known to the trial court. La. *679 Code Evid. art. 103 A(2). Because defendant failed to make a proffer, he is barred procedurally from advancing this assignment of error on appeal. See State v. Lynch, 94-0543, p. 17-18 (La.App. 1 Cir. 5/5/95), 655 So.2d 470, 480, writ denied, 95-1441 (La.11/13/95), 662 So.2d 466.
We also find there does not appear to be any merit in defendant's arguments. On appeal, defendant argues for the first time that the descriptions provided by the witnesses to Deputy Gallo were present sense impressions and, thus, were admissible as an exception to the hearsay rule. "A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter" is not excluded by the hearsay rule, even though the declarant is available as a witness. La.Code Evid. art. 803(1). The critical factor is whether the statement was made while the individual was "perceiving" the event or "immediately thereafter." This immediacy requirement permits only the passage of "time needed for translating observation into speech." Buckbee v. United Gas Pipe Line Company Inc., 561 So.2d 76, 84 (La.1990) (quoting McCormick on Evidence § 298). The party seeking to admit evidence under an exception to the hearsay rule has the burden to establish application of the exception. See State v. Cade, 539 So.2d 650, 654 (La.App. 5 Cir.), writ denied, 548 So.2d 1245 (1989).
The amount of time that elapsed between the incident and when Deputy Gallo took an initial statement from the witnesses is not evident in the testimony. However, it is apparent from Deputy Gallo's testimony that the time was longer than that needed for translating observation into speech. Accordingly, the testimony was not admissible under the present sense impression exception. Cf. State v. Ditcharo, 98-1374, p. 10 (La.App. 5 Cir. 7/27/99), 739 So.2d 957, 963, writ denied, 99-2551 (La.2/18/00), 754 So.2d 964 (where the victim spoke to the police five minutes after she was stabbed and just after she jumped from the defendant's car, officer's testimony about the victim's statements found admissible under the present sense impression exception to the hearsay rule).
Defendant further argues that the court's ruling violated his right to present the defense of misidentification. In State v. Gremillion, 542 So.2d 1074, 1078 (La. 1989), the Louisiana Supreme Court recognized that while hearsay should generally be excluded, if it is reliable and trustworthy and its exclusion would interfere with the defendant's constitutional right to present a defense, it should be admitted.
In the instant case, defendant took full advantage of discrepancies in the various descriptions. Three of the witnesses interviewed by Deputy Gallo testified at the trial, one as a defense witness, and defendant had the opportunity to question the witnesses about the descriptions they gave to law enforcement officers. Under these circumstances, defendant's right to present a defense was not impaired by the court's ruling. Furthermore, when the state attempted to question Deputy Gallo and Deputy Rhys Flynn about descriptions provided by witnesses, defendant objected on hearsay grounds to the admission of such evidence. Thus, he cannot now complain about the court's refusal to admit such testimony.
For these reasons, we find no merit in the third assignment of error.

STATE'S REBUTTAL ARGUMENT
In assignment of error number four, defendant claims his convictions should be reversed because the prosecutor, during her rebuttal argument, made disparaging remarks about defense counsel's veracity and attempted to turn the trial into a plebiscite against crime.
Defendant quotes the following portions of the state's rebuttal argument as being improper:
The great finder of the truth. The great presenter of the truth, the same *680 man that stood up and represented to you during opening statements that this crime carries a life sentence. The judge had to stop him, the judge had to admonish him. The great finder of the truth. I am so glad that the great finder of the truth has testified before you that Ywkinee doesn't know Barry Brown. Because you know what, you didn't hear that from that witness stand. If he was so sure, why didn't he ask Ywkinee. What he told you is not evidence. What came from that stand was, and there wasn't any evidence of that.
* * * * * *
[The defense claim that defendant's picture does not show him as being unshaven is mistaken.] That must be more defense mistakes presented by the great finder of the truth, who got up here and told you that I had that picture of the back of the car that he introduced sitting on my desk when that witness was testifying, which is a blatant lie. And how do you think he got that photo? He got that photo from me. So don't fall into the great finder of the truth.
* * * * * *
Now, counsel argues that I didn't argue Mr. Mensch's in-court identification. I guess he was napping, because I distinctly remember standing up here and going through it with you.
* * * * * *
Do you think [defense counsel's] cross-examination [of Mrs. Mensch] was just so effective that she just changed her mind? You know better that that. Y'all watched her. Don't fall for that trickery. And that's what it is. Don't fall for that. The great finder of the truth.
* * * * * *
We, as Baton Rouge citizens, you, as Baton Rouge citizens need to do the right thing. You do have the truth. You've been given plenty of evidence and you know what the truth is. Don't let that man be the welcoming committee. Welcome to Baton Rouge. The state respectfully requests that after you discuss this case fully, you find the defendant guilty as charged. Thank you.
Closing argument should be confined to the evidence admitted, to the lack of evidence, to conclusions of fact to be drawn from the evidence, and to the law applicable to the case. The argument shall not appeal to prejudice, and the state's rebuttal argument must be confined to answering the argument of the defendant. La.Code Crim. P. art. 774. Comments by the prosecutor about counsel for defendant have no place in a criminal proceeding. State v. Taylor, 553 So.2d 873, 884 (La.App. 1 Cir.1989), writ denied, 558 So.2d 600 (1990). Additionally, prosecutors should not turn closing argument into a plebiscite on crime by making overt references to community sentiment. State v. Deboue, 552 So.2d 355, 364 (La.1989), cert. denied, 498 U.S. 881, 111 S.Ct. 215, 112 L.Ed.2d 174 (1990). Any attempt by a prosecutor to convey the message that the jury represents the people of a particular parish is improper closing argument. See State v. Colligan, 95-880, p. 9 (La.App. 3 Cir.8/7/96), 679 So.2d 184, 189. An appellate court will not reverse a conviction because of improper closing arguments unless it is thoroughly convinced that the remarks influenced the jury or contributed to the verdict. State v. Howard, 98-0064, p. 26 (La.4/23/99), 751 So.2d 783, 812, cert. denied, 528 U.S. 974, 120 S.Ct. 420, 145 L.Ed.2d 328 (1999).
Initially, we note that defendant did not object to the state's rebuttal argument. A defendant's failure to object contemporaneously to improper argument by the prosecutor waives any claim on appeal based on the argument. State v. Williams, 96-1023, p. 13 (La.1/21/98), 708 So.2d 703, 715, cert. denied, 525 U.S. 838, 119 S.Ct. 99, 142 L.Ed.2d 79 (1998). See La.Code Crim. P. art. 841. Accordingly, defendant is procedurally barred from having this claim reviewed.
*681 Even if defendant had preserved the issue for review, there does not appear to be any merit to his arguments. Starting with voir dire of the first jury panel and continuing in the defense closing argument, defense counsel emphasized to the jury that his role as defense counsel was to assist the jury in finding the "truth." In the defense closing argument, defense counsel claimed the prosecutor presented a "cookie-cutter" version of the truth and spoke out of both sides of her mouth. The prosecutor's references on rebuttal to defense counsel being the "great finder of the truth" was a direct response to defense counsel's arguments. While it was inappropriate for the prosecutor to claim defense counsel told a "blatant lie" and for the prosecutor to ask the jurors, in reaching a verdict, to represent the City of Baton Rouge, we are not convinced the state's remarks influenced the jury's verdicts in any manner.
Accordingly, we find no merit in the fourth assignment of error.

SUFFICIENCY OF THE EVIDENCE
In assignment of error number five, defendant maintains the evidence was insufficient to establish his identity as the person who committed the crimes.
The standard of review for sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude the state proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt. Where the key issue is the defendant's identity as the perpetrator, rather than whether or not the crime was committed, the state is required to negate any reasonable probability of misidentification. State v. Lucas, 99-1524, p. 2-3 (La. App. 1 Cir. 5/12/00), 762 So.2d 717, 720.
When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Lucas, 99-1524 at 3, 762 So.2d at 720.
After the robbery, Mrs. Mensch told the investigating officers she would be able to recognize the man who robbed her and would never forget his face. Eight days later, she selected defendant's picture in a photographic array. According to one of the detectives, when Mrs. Mensch viewed the photographs, she immediately pointed her finger at defendant's picture and said, "This is him; this is him." A lieutenant who was present testified that Mrs. Mensch had no hesitancy when she selected defendant's picture and she "almost drove her finger through the picture." At trial, both Dr. and Mrs. Mensch identified defendant in court, and they both said they were one hundred percent sure about the identification.
In addition to eyewitness identification, the state introduced other evidence connecting defendant with the offenses. Defendant's refusal to cooperate when the police ordered him to come out of the apartment, and later when the police instructed him to put his hands in the air, is an indication of defendant's guilty knowledge. Additionally, defendant's car was consistent with the descriptions of the getaway vehicle, and the unusual luggage rack was found inside the trunk. Although defense witnesses claimed the rack had been removed from the vehicle months before the offenses, such testimony was suspect and not supported by the physical evidence.
Because defendant has a scar on his face and gold teeth, defendant argues Mrs. Mensch's failure to notice a scar and gold *682 teeth on the suspect raises doubts about the accuracy of her identification. However, at trial Mrs. Mensch explained that the suspect was not looking directly at her when he spoke, and even in the courtroom Mrs. Mensch did not notice the scar on defendant's face unless the light shone in a particular direction.
Defendant also argues the wide range of descriptions by various witnesses as to the age, height, weight, hair style, and getaway car undermines Mrs. Mensch's identification. This argument, which goes to the weight of the evidence, was clearly within the province of the jury. The fact different witnesses provided varying descriptions of the suspect and vehicle does not make the identifications by Dr. and Mrs. Mensch any less reliable. See State v. Brown, 31123, p. 10 (La.App. 2 Cir. 9/23/98), 719 So.2d 146, 152. Positive identification by only one witness may be sufficient to support a defendant's conviction. Lucas, 99-1524 at 2-3, 762 So.2d at 720.
At trial, defendant presented the testimony of Tina Moore. Ms. Moore claimed defendant was with her at the time of the offenses. Considering Ms. Moore told an investigator with the district attorney's office that she could not remember being with defendant on the date of the offenses, the jury was not unreasonable to reject Ms. Moore's trial testimony. Defendant also presented the testimony of Barry Brown, a maintenance man at a nearby hotel who observed the incident from a distance. Mr. Brown testified that defendant's hair style was not the same as the style worn by the assailant. Mr. Brown claimed he described the hair style to the police, but the deputy testified that Mr. Brown simply told him the assailant had short hair. Considering Mr. Brown lived in apartment 704 of the same apartment complex where defendant was arrested (in apartment 706), and considering Mr. Brown twice failed to appear for a physical lineup and also failed to keep an appointment with the assistant district attorney, the jury's determination to reject his testimony is not unreasonable.
The jury in the instant case voted to convict defendant of armed robbery and two counts of attempted second degree murder. The verdicts reflect the jury's acceptance of the testimony of the state's witnesses and rejection of the testimony of the defense witnesses. It is well settled that the trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d 31, 38 (La.App. 1 Cir.1984). A reviewing court is not called upon to decide if it believes the witnesses or if the conviction is contrary to the weight of the evidence. State v. Mussall, 523 So.2d 1305, 1311 (La.1988). If "rational" triers of fact could disagree as to the interpretation of the evidence, a rational trier's view of all of the evidence most favorable to the prosecution must be adopted. Mussall, 523 So.2d at 1310. Only "irrational" decisions to convict will be overturned. See Mussall, 523 So.2d at 1310. Under the facts of this case, the jury's decision to accept the testimony of Dr. and Mrs. Mensch and to reject the testimony of the defense witnesses is not irrational.
In a single sentence, defendant argues his conviction for attempted second degree murder of Mrs. Mensch is not supported by any evidence. During closing argument, the prosecutor acknowledged the state's evidence of the attempted second degree murder of Dr. Mensch was "a much clearer case" than the attempted second degree murder of Mrs. Mensch. Throughout the trial and on appeal, defendant's focus has been on the sufficiency of the evidence of identity. Defendant's one sentence regarding the attempted second degree murder of Mrs. Mensch is not sufficient to be viewed as an attempt to brief the issue on appeal. See Uniform Rules-Courts of Appeal, Rule 2-12.4. In any event, the state's evidence sufficiently established all the elements of attempted second degree murder of Mrs. Mensch. When the first shot was fired, Mrs. Mensch was following her husband and she *683 had just called out his name. Although she was not as close to defendant as was her husband, defendant knew she was part of the pursuit.
A thorough review of the record convinces us that the evidence presented herein, viewed in the light most favorable to the state, proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of the offenses and defendant's identity as the perpetrator of the offenses. Accordingly, this assignment of error is without merit.

PATENT ERROR
In reviewing the record for patent error, we have discovered that the trial court did not wait the required twenty-four hours after denial of defendant's motion for new trial before imposing sentence, nor did defendant waive the waiting period. A trial court is required to wait twenty-four hours after denial of a defendant's motion for new trial before imposing sentence unless the defendant has waived the waiting period. La.Code Crim. P. art. 873. Defendant did not waive the delay; and, thus, the court erred when it sentenced defendant within twenty-four hours after denial of the motion. However, because defendant does not raise this issue on appeal and has not challenged the sentences on appeal, the error is not reversible unless defendant can show he was prejudiced. See State v. Augustine, 555 So.2d 1331, 1333-34 (La.1990); State v. Claxton, 603 So.2d 247, 250 (La.App. 1 Cir.1992). On appeal, defendant has not cited any prejudice resulting from the court's failure to delay sentencing nor has defendant even noted this as error. We have reviewed the record and find no indication defendant was prejudiced by the error. Thus, the error is not reversible.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] Honorable D. Milton Moore, III, Judge of the Fourth Judicial District Court, serving Pro Tempore by special order of the Louisiana Supreme Court.