STATE OF LOUISIANA
v.
LARRY MACK.
No. 2007 KA 1225.
Court of Appeals of Louisiana, First Circuit.
December 21, 2007.
NOT DESIGNATED FOR PUBLICATION.
DOUG MOREAU, District Attorney , DYLAN C. ALGE, Assistant District Attorney Counsel for Appellee, State of Louisiana.
FREDERICK KROENKE, Louisiana Appellate Project, Counsel for Defendant/Appellant, Larry Mack.
Before WHIPPLE, GUIDRY, and HUGHES, JJ.
GUIDRY, J.
The defendant, Larry Darnell Mack, was charged by bill of information with one count of second degree kidnapping, a violation of La. R.S. 14:44.1, and pled not guilty. Following a jury trial, he was found guilty as charged. He was sentenced to fifteen years at hard labor. He now appeals, designating one assignment of error. We affirm the conviction and sentence.

ASSIGNMENT OF ERROR
1. The failure of trial counsel to file a motion to suppress the photo identification of the defendant by the witness, or to object to the unconstitutionally suggestive photo line-up at trial, constitutes ineffective assistance of counsel.

FACTS
The victim, Vanessa Moore, gave the following account of the offense. On the evening of May 26, 2006, she left 5548 Stearns Street in her vehicle and drove in the direction of Plank Road. Approximately two and one-half blocks down the road, a man approached her vehicle on the passenger side (which was locked) and told her to open the door. The victim told the man that she did not know him. The man went around to the driver's side (which was unlocked), opened the door, pulled out a flat, black gun, and told the victim to open the passenger's-side door. The man threatened to shoot the victim if she "back[ed] up or ... move[d.]" The victim opened the passenger's-side door, and the man got into the vehicle. The man stated he had just "pistol whipped" someone and wanted to go back to that area. The man spoke to the victim about his sister and his grandfather. While pointing a gun at the victim, the man ordered her to drive to Plank Road, turn right, and then to turn left at Ford Street. Halfway down Ford Street, however, the man saw some police officers at the end of the street and ordered the victim to drive back to Plank Road. Thereafter, the man ordered the victim to drop him off at a barbershop on Sumrall. After complying with the man's demands, the victim drove home and reported the incident to the police. The victim gave a physical description and a clothing description of the man.
Four days later, the police asked the victim to view a photographic line-up containing the defendant's photograph. The victim selected the defendant's photograph from the line-up in five or six seconds. She also identified the defendant at trial as her kidnapper.
Baton Rouge Police Officer Jeremy Stanley received the victim's complaint concerning the kidnapping. The victim described her assailant as a black male, weighing 200 to 220 pounds, with braided hair and two gold teeth, one on each side of his two front teeth. She also indicated that he told her he had just pistol whipped someone that his gun had discharged several times, that he (the defendant) was twenty-five years old, and that he had just been released from jail.
Officer Stanley contacted the police officer investigating the crime on Ford Street and learned the description of the suspect in that offense matched the description given by the kidnapping victim. Additionally, witnesses to the Ford Street crime named the defendant as the perpetrator of that crime. Officer Stanley obtained a copy of the defendant's Louisiana driver's license. The license indicated the defendant was twenty-five years old and matched the victim's description of the kidnapper.
The defendant testified at trial. He conceded he had convictions for possession of cocaine and simple burglary and he was a drug dealer. He denied pulling a gun on the victim and kidnapping her. He claimed the pistol whipping accusation against him was false and that the alleged victim of that offense, Wade O'Neil, had rented his truck to the defendant in exchange for cocaine. He claimed O'Neil and the victim had named him as their assailant because one of the defendant's enemies, whom he did not name, had given them his name.

INEFFECTIVE ASSISTANCE OF COUNSEL
In his sole assignment of error, the defendant argues he was the only person in the photo line-up with gold teeth, and thus, defense counsel was ineffective for failing to move to suppress the identification as a suggestive photographic line-up.
A claim of ineffective assistance of counsel is generally relegated to post-conviction proceedings, unless the record permits definitive resolution on appeal. State v. Miller, 99-0192, p. 24 (La. 9/6/00), 776 So.2d 396, 411, cert. denied, 531 U.S. 1194, 121 S.Ct. 1196, 149 L.Ed.2d 111 (2001).
A claim of ineffectiveness of counsel is analyzed under the two-pronged test developed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to establish that his trial attorney was ineffective, the defendant must first show that the attorney's performance was deficient, which requires a showing that counsel made errors so serious that he was not functioning as counsel guaranteed by the Sixth Amendment. Secondly, the defendant must prove that the deficient performance prejudiced the defense. This element requires a showing that the errors were so serious that defendant was deprived of a fair trial; the defendant must prove actual prejudice before relief will be granted. It is not sufficient for defendant to show that the error had some conceivable effect on the outcome of the proceeding. Rather, he must show that but for the counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Further, it is unnecessary to address the issues of both counsel's performance and prejudice to the defendant if the defendant makes an inadequate showing on one of the components. State v. Serigny, 610 So.2d 857, 859-60 (La. App. 1st Cir. 1992), writ denied, 614 So.2d 1263 (La. 1993).
A defendant who seeks to suppress an identification must prove two things. First, he must prove that the identification itself was suggestive. Secondly, he must show that there was a likelihood of misidentification as a result of the identification procedure. The factors to be considered in assessing reliability are: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of his prior description of the criminal, (4) the witness's level of certainty, and (5) the time between the crime and the confrontation. State v. Caples, 2005-2517, pp. 6-7 (La. App. 1st Cir. 6/9/06), 938 So.2d 147, 152, writ denied, 2006-2466 (La. 4/27/07), 955 So.2d 684.
An identification procedure is suggestive if it unduly focuses a witness's attention on the suspect. Strict identity of physical characteristics among the persons depicted in a photographic array is not required; however, there must be sufficient resemblance to reasonably test the identification. State v. Johnson, XXXX-XXXX, p. 7 (La. App. 1st Cir. 12/22/00), 775 So.2d 670, 677, writ denied, XXXX-XXXX (La. 5/30/03), 845 So.2d 1066.
In concluding that he was the only person in the line-up with gold teeth, the defendant relies upon the victim's testimony at trial, rather than the photographic line-up itself. On cross-examination, defense counsel asked the victim, "So none of the other guys [in the photographic line-up] had gold teeth?" The victim responded, "Not that I saw, no." Defense counsel was testing the victim's certainty that line-up photograph #4 (the defendant's photograph), rather than one of the other five photographs in the line-up, depicted her kidnapper. Defense counsel's previous question to the victim had been, "Did any other people in that line up look like [the defendant]?" The victim's response was, "It was like some distinctive things that really made him stand out about the two gold teeth in his mouth and the braids in his hair."
In the instant case, the photographic line-up was not suggestive, and thus, defense counsel did not perform deficiently in failing to move to suppress the identification. The photographic line-up consisted of photographs of six young, black males. Five of the males, including the defendant, had gold teeth, (the sixth male's mouth was closed), and four of the males, including the defendant, had braided hair. See State ex rel. Roper v. Cain, 99-2173, p. 6 (La. App. 1st Cir. 10/26/99), 763 So.2d 1, 5 (per curiam), writ denied, XXXX-XXXX (La. 11/17/00), 773 So.2d 733 ("If the substantive issue an attorney failed to raise has no merit, then the claim the attorney was ineffective for failing to raise the issue also has no merit.")
This assignment of error is without merit.

REVIEW FOR ERROR
Initially, we note that our review for error is pursuant to La. C.Cr.P. art. 920, which provides that the only matters to be considered on appeal are errors designated in the assignments of error and "error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." La. C.Cr.P. art. 920(2).
The trial court failed to deny the defendant parole for at least two years of the sentence. See La. R.S. 14:44.1(C). Although the failure to deny parole is error under La. C.Cr.P. art. 920(2), it is certainly harmless error. The defendant is not prejudiced in any way by the court's failure to deny him parole. Because the trial court's failure to deny parole was not raised by the State in either the trial court or on appeal, we take no action regarding the same. See State v. Price, 2005-2514 (La. App. 1st Cir. 12/28/06), 952 So.2d 112, 124-25 (en banc) (petition for cert. filed at La. Supreme Court on 1/24/07, 2007-K-130).
CONVICTION AND SENTENCE AFFIRMED