STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2023 KA 0332

STATE OF LOUISIANA

VERSUS

SHANELL THOMPSON

Judgment Rendered: __NOV 0 3 2023__

Appealed from the
17th Judicial District Court
In and for the Parish of Lafourche
State of Louisiana
Docket No. 580279

The Honorable Marla M. Abel, Judge Presiding

Kristine Russell
District Attorney
Heather Hendrix
Joseph S. Soignet
Assistant District Attorney
Thibodaux, Louisiana

Counsel for Appellee,
State of Louisiana

Jane L. Beebe
Addis, Louisiana

Counsel for Defendant/Appellant,
Shanell Thompson

BEFORE: McCLENDON, HESTER, AND MILLER, JJ.

McClenda, J. Agreed in part and concurs in part for reasons assigned

**MILLER, J.**

The defendant, Shanell Thompson, was charged by grand jury indictment with one count of second degree murder, a violation of La. R.S. 14:30.1(A)(1). She pled not guilty. Following a jury trial, the defendant was found guilty of the responsive verdict of manslaughter. The trial court denied the defendant's motions for new trial and post verdict judgment of acquittal, and sentenced her to thirty years imprisonment at hard labor.

The defendant now appeals, designating two assignments of error: (1) the trial court's denial of her motion for mistrial; and (2) the trial court's exclusion of the victim's alleged dying declaration in which he identified his assailant as someone other than the defendant. For the following reasons, we affirm the conviction and sentence.

## STATEMENT OF FACTS

In the early morning hours of September 22, 2018, the victim, Justin Nixon, returned home from visiting a friend. Nixon lived with the defendant, their eight-year-old daughter, and the defendant's mother, Tammy Thompson, in Houma, Louisiana. The defendant's great uncle, Richard Thompson, the defendant's brother, Earl Henry, Jr. ("EJ"), and EJ's girlfriend, Markeisha Folse, were also at the house.

When Nixon returned home that night, the defendant questioned him about text messages he sent to another woman on the defendant's phone. They began to argue and struggle over the defendant's phone. Nixon, EJ, and the defendant then had a physical altercation, which resulted in Nixon being stabbed. Thereafter, the defendant's mother drove Nixon and the defendant to the hospital.

Nixon passed away from his injuries later that morning. The defendant was brought in for questioning and advised of her Miranda[1] rights. During an interview

---
[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

with Detective Nicholas Pepper, she initially claimed that Nixon was already stabbed when he returned home. However, she later recanted that statement and admitted to stabbing Nixon. According to the defendant, she and Nixon fought on her bed until EJ pushed Nixon off of her. They moved into the kitchen, where she stabbed Nixon after he tried to punch her again. EJ then called 911 at approximately 12:43 a.m. The defendant also disclosed during the interview that Nixon repeatedly said, "She cut me."

## MOTION FOR MISTRIAL

In her first assignment of error, the defendant argues that the trial court erred in denying her motion for mistrial. Specifically, the defendant contends that the trial court should have granted a mistrial pursuant to La. C.Cr.P. art. 775 because two of the victim's family members wore memorial shirts during the trial while sitting in the front row of the spectator's gallery.

Louisiana Code of Criminal Procedure article 775 requires a mistrial on motion of the defense when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial. A mistrial is a drastic remedy that should only be declared upon a clear showing of prejudice by the defendant. State v. Cowart, 2022-1318 (La. App. 1st Cir. 6/2/23), ___ So. 3d ___, 2023 WL 3862030, *2. In addition, a trial judge has broad discretion in determining whether conduct is so prejudicial as to deprive an accused of a fair trial. Id. A reviewing court in Louisiana should not reverse a defendant's conviction and sentence unless the error has affected the substantial rights of the accused. Id.; see La. C.Cr.P. art. 921.

On the first day of trial, two individuals entered the courtroom wearing shirts displaying a photo of the victim and the phrase "Justice for Justin." They were accompanied by a victim's advocate employed by the Lafourche Parish District Attorney's Office. Defense counsel moved for a mistrial, arguing that the shirts were worn in an attempt to communicate with and inflame the jury and to compel the

3

jurors to decide the case based on sympathy or passion. In response, the State argued that the shirts were not prejudicial and were merely an expression of love and grief, not an accusation of guilt. The trial court denied the motion for mistrial, noting that mistrial was "too drastic of a remedy."

On appeal, the defendant argues that the victim's picture, combined with the message "Justice for Justin," constituted a nonverbal message to the jury that "struck at the heart of the defense regarding identity." Moreover, the defendant asserts that the message "Justice for Justin" suggested that justice would not be delivered unless the defendant was convicted. Because her defense at trial was that her brother, EJ, stabbed Nixon, the defendant claims she was denied her right to a fair trial.

The defendant contends the instant case is similar to State v. Allen, 2000-0346 (La. App. 4th Cir. 10/17/01), 800 So. 2d 378, writ denied, 2001-3086 (La. 9/30/02), 825 So. 2d 1188. In Allen, a photograph of the victim was displayed on the prosecutor's table during the testimony of several witnesses, over defense objection and after the court instructed the State to take down the photograph. Id. at 389. In addition, a witness testified while wearing a shirt "emblazoned" with a photo of the victim. Id. at 390. On appeal, the Fourth Circuit stated that wearing the shirt was a "visual message, solely for the purpose to promote pity for the victim and arouse the passion and prejudice against the defendant for the crime." Id. The court held that the combination of the prosecutor displaying the victim's photo and the witness's shirt denied the defendant a fair trial. Id.

In State v. Vollentine, 2011-0353 (La. App. 1st Cir. 9/14/11), 2011 WL 4448171, *5 (unpublished), writ denied, 2011-2151 (La. 2/17/12), 82 So. 3d 282, spectators and at least one witness wore shirts bearing pictures of the victim. The defendant moved for a new trial, arguing that he did not receive a fair trial. The motion was denied by the trial court. Id. Thereafter, this court held that there was no clear abuse of discretion in the trial court's denial of the defendant's motion for new

4

trial. Id. at *6. Unlike in Allen, Vollentine's identity was not at issue, so there was less potential for prejudice to the defendant from the display of any photographs of the victim. Id. at *7. Moreover, the photograph displayed in Allen was displayed by the State, rather than family and friends of the victim. Id.

We have also reviewed State v. Nelson, 96-0883 (La. App. 4th Cir. 12/17/97), 705 So. 2d 758, 763, writ denied, 98-0197 (La. 6/5/98), 720 So. 2d 677, where the victim's friends and family wore shirts displaying the victim's picture. The spectators wearing the shirts were not readily visible to the jury, and there was no evidence of any demonstration or outburst of emotion. Id. Holding the shirts were not inflammatory, the court stated: "If anything inflamed the jury, it was the facts of the offenses revealed from the witness stand, not the wearing of t-shirts by some spectators." Id.

Here, we find no clear abuse of discretion in the trial court's denial of the motion for mistrial. Despite the defendant's assertion to the contrary, this case is distinguishable from Allen and is more analogous to Vollentine and Nelson. In the instant case, the shirts were worn by the victim's family and friends, and there was no display by the State. The shirts were only visible to the jury for about an hour before the individuals put jackets on over the shirts. Although the spectators sat in the front row of the gallery, they did not testify nor perform any demonstration, nor was there an outburst of emotion. See Nelson, 705 So. 2d at 763. In addition, the victim's advocate accompanying the family members did not wear any clothing that identified her as a representative of the Lafourche Parish District Attorney's Office. Accordingly, the spectators wearing the memorial shirts were not offensive and did not draw an inordinate amount of attention to themselves. See Vollentine, 2011 WL 4448171 at *7.

Further, although the defendant made an issue of the identity of the perpetrator by arguing that EJ was responsible, the defendant confessed to stabbing Nixon hours

after his death. After the incident, witnesses told police the defendant stabbed Nixon. When questioned by detectives, EJ did not provide any information to suggest that he was the perpetrator rather than the defendant. The jury could easily conclude that the defendant was responsible for killing Nixon based on her own confession, the evidence, and the corroborating statements of witnesses. Therefore, the trial court's denial of the motion for mistrial was not error, and this assignment lacks merit.

## DYING DECLARATION

In her second assignment of error, the defendant argues that the trial court erred by excluding evidence of the victim's alleged dying declaration wherein he identified his assailant as someone other than the defendant. The defendant contends that by excluding this statement, the trial court impermissibly impaired her right to present a defense.

A criminal defendant has the constitutional right to present a defense. See U.S. Const. amend. VI; La. Const. art. I, § 16; Chambers v. Mississippi, 410 U.S. 284, 302, 93 S. Ct. 1038, 1049, 35 L. Ed. 2d 297 (1973). If a witness was in a position to offer testimony that might have substantially helped the particular defense asserted by the defendant, an erroneous exclusion of the offered testimony may be prejudicial. See State v. Jarreau, 96-1480 (La. App. 1st Cir. 3/27/97), 692 So. 2d 33, 35, writ denied, 97-1122 (La. 10/13/97), 703 So. 2d 612. See also State v. Shoemaker, 500 So. 2d 385, 389 (La. 1987). In compelling circumstances, the defendant's right to present a defense allows admission of hearsay evidence. See State v. Rubin, 2015-1753 (La. 11/6/15), 183 So. 3d 490, 491 (per curiam); State v. Nixon, 2017-1582 (La. App. 1st Cir. 4/13/18), 250 So. 3d 273, 279-80, writ denied, 2018-0770 (La. 11/14/18), 256 So. 3d 290. Constitutional guarantees, however, do not assure the defendant the right to admit any type of evidence, only that which is deemed trustworthy and has probative value. State v. Governor, 331 So. 2d 443, 449 (La. 1976); Nixon, 250 So. 3d at 280.

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." La. C.E. art. 801(C). Hearsay is not admissible except as otherwise provided by law. La. C.E. art. 802. Louisiana Code of Evidence article 804, in pertinent part, provides:

> **B. Hearsay exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

> \*\*\*

> **(2) Statement under belief of impending death.** A statement made by a declarant while believing that his death was imminent, concerning the cause or circumstances of what he believed to be his impending death.

A statement is admissible as a dying declaration if made when the declarant is conscious of his condition and aware of his approaching demise. State v. Verrett, 419 So. 2d 455, 457 (La. 1982); State v. Davis, 2014-1128 (La. App. 1st Cir. 3/6/15), 2015 WL 996193, *7 (unpublished), writ denied, 2015-0614 (La. 3/4/16), 188 So. 3d 1055. The necessary state of mind may be inferred from the facts and circumstances surrounding the making of the declaration, and the victim need not express this belief in direct terms. Davis, 2015 WL 996193 at *7. While there is no absolute rule to determine with certainty whether the declarant, at the time of making his statement, really expected to die, courts look to whether the wound was fatal and whether the declarant died shortly after making his statement. Id. When these two circumstances are present, courts have uniformly held that the declarant really believed death was impending and thus admitted his statement as a dying declaration. Id.

At trial, the defendant wished to pursue the theory of third-party guilt, asserting that her brother, EJ, was the one who stabbed Nixon. In connection with this theory of innocence, the defendant called her mother, Tammy Thompson, as a witness. Tammy testified that after Nixon was stabbed, he walked towards Tammy

7

and said, "[H]e didn't have to stab me, he didn't have to stab me."[2] While she drove Nixon and the defendant to the hospital, Nixon was awake, alert, and talking to the defendant. According to Tammy, Nixon's last words in the car were, "[H]e didn't have to stab me." This time, the State objected based on hearsay. The State argued that it was unknown whether the victim knew he was dying at that time. Defense counsel then attempted to lay a foundation, and Tammy stated that Nixon was seriously injured and knew that he was seriously injured. Defense counsel again asked Tammy what the last thing Nixon said was, and the State again objected. The trial court sustained the objection and told Tammy that she could not testify as to what Nixon said.[3] No reason for sustaining the objection was given, therefore the trial court did not state a belief as to whether the testimony was trustworthy or probative or whether a proper foundation had been laid. Neither did the trial court instruct the jury to disregard the statement.

Outside the presence of the jury, defense counsel proffered the excluded statement into evidence. Tammy stated that, while on the way to the hospital, Nixon repeatedly said, "he didn't have to stab me." The only men in Tammy's house at the time of the crime were her uncle, Richard, and her son, EJ. Since EJ was in the room where Nixon and the defendant were fighting, she assumed Nixon meant EJ when Nixon said "he."

As noted above, a statement is admissible as a dying declaration if made when the declarant is conscious of his condition and aware of his approaching demise. Davis, 2015 WL 996193 at *7. During her interview with Detective Pepper, the defendant stated that after Nixon was stabbed, he repeatedly said, "She cut me." When the first deputy arrived just eight minutes after the 911 call, Tammy, Nixon,

---

[2] The State did not object to this statement.

[3] The trial judge stated "[o]verruled[,]" but it appears that she was referring to defense counsel's argument, not the objection, because further testimony was not allowed.

and the defendant were already on the way to the hospital. By early morning, Nixon was deceased. Dr. Yen Van Vo, the forensic pathologist who performed Nixon's autopsy, confirmed that Nixon's cause of death was a single stab wound to the chest. The wound lacerated his left lung, esophagus, and aorta, and caused extensive blood loss. Although Nixon did not expressly state that he thought he was going to die, his statements indicate that he was aware that he had been stabbed. Finally, his wound was clearly fatal, as he died within hours of making the alleged statement.

Due to the magnitude of the victim's injuries, the victim's awareness of his condition, the circumstances surrounding the declaration, and the victim's subsequent death, we find a basis for finding that the victim was in fact, and believed himself to be, near death and, therefore, his statement to Tammy Thompson was a dying declaration. See Davis, 2015 WL 996193 at *7; State v. Lucas, 99-1524 (La. App. 1st Cir. 5/12/00), 762 So. 2d 717, 724. Accordingly, we find that it would have been error to exclude Tammy Thompson's testimony. However, the record reveals that her testimony was not entirely excluded. The testimony was presented to the jury and argued by counsel for the State and the defense. Tammy may not have been allowed to elaborate, but the jury was told of the dying declaration.

A trial error does not provide grounds for reversal of a defendant's conviction and sentence unless it affects substantial rights of the accused. See La. C.Cr.P. art. 921; La. C.E. art. 103(A); State v. Young, 2020-01041 (La. 5/13/21), 320 So. 3d 356, 361 (per curiam); State v. Magee, 2011-0574 (La. 9/28/12), 103 So. 3d 285, 318, cert. denied, 571 U.S. 830, 134 S. Ct. 56, 187 L. Ed. 2d 49 (2013). Under the harmless-error test of Chapman v. California, 386 U.S. 18, 24, 87 S. Ct. 824, 828, 17 L. Ed. 2d 705 (1967), the question is whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." State v. Burton, 2019-01079 (La. 6/30/21), 320 So. 3d 1117, 1123 (per curiam). In Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S. Ct. 2078, 2081, 124 L. Ed. 2d 182

9

(1993), the Supreme Court clarified that the inquiry "is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error." Burton, 320 So. 3d at 1123.

The evidence introduced at trial showed that, while the defendant initially claimed that Nixon arrived home already stabbed, she later recanted that statement. In her interview with police on the day of Nixon's death, the defendant confessed to stabbing Nixon and did not implicate her brother, EJ, in the crime. Moreover, the investigation did not suggest that EJ committed the crime. After the crime occurred, Detective Pepper took the statements of the defendant's great uncle, Richard, and EJ's girlfriend, Markeisha Folse. Both Richard and Markeisha indicated that the defendant stabbed Nixon, and Markeisha stated that the defendant asked her to clean up the blood at the scene. Detective Elizabeth Leon was present when EJ and Markeisha were questioned, and she did not learn any information that would implicate EJ, but instead learned information that implicated the defendant as the perpetrator. Finally, Dr. Yen Van Vo did not observe any physical evidence, such as bruises, scratches, or swelling, on Nixon's hands that would indicate he punched someone prior to his death. The lack of physical evidence on Nixon's hands suggests that he was not involved in a serious physical altercation before his death, as the defendant described.

After a thorough review of the record, we find that even if the trial court erred in limiting Tammy's testimony, that error was harmless. While the trial court eventually sustained the hearsay objection, the statement had already been made and heard by the jury. After the trial court's ruling, the jury was not admonished to disregard the statement. Further, the contested statement was cumulative of previous testimony by Tammy to which the State did not object. Finally, the State drew attention to Tammy's statement on cross-examination, and both the State and

defense counsel referenced Tammy's testimony during closing arguments. Therefore, we cannot conclude that the defendant was prejudiced by the limits the trial court put on her testimony.

Moreover, the State's evidence presented at trial provided overwhelming support for the jury's guilty verdict of manslaughter. Considering the defendant's own confession, forensic evidence, and the testimony in this case, it was clear to the jury that one person, the defendant, was guilty, and Tammy's cumulative testimony of third-party guilt would have no bearing on the outcome of this case. See Holmes v. South Carolina, 547 U.S. 319, 330, 126 S. Ct. 1727, 1734, 164 L. Ed. 2d 503 (2006). Accordingly, the jury's guilty verdict rendered in this case is surely unattributable to any error resulting from the defendant's inability to present the victim's statement as a defense. See State v. Casey, 99-0023 (La. 1/26/00), 775 So. 2d 1022, 1033, cert. denied, 531 U.S. 840, 121 S. Ct. 104, 148 L. Ed. 2d 62 (2000).

Therefore, there are no grounds for the reversal of the defendant's conviction and sentence, and both assignments of error are without merit.

**CONVICTION AND SENTENCE AFFIRMED.**

11



STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

DOCKET NUMBER

2023 KA 0332

STATE OF LOUISIANA

VERSUS

SHANELL THOMPSON

**McClendon, J., agreeing in part and concurring in part.**

I agree with the majority that there was no abuse of the trial court's discretion in denying defendant's motion for a mistrial. However, the majority also found that the victim's statement to Tammy Thompson was admissible as a dying declaration and that the trial court erred in excluding the testimony. I disagree. I do not believe, under the particular facts of this case, that the victim's statement would qualify as a "statement under belief of impending death." See LSA-C.E. art. 804(B)(2).

Therefore, I would not have found any abuse of the trial court's discretion in excluding the victim's statement, thereby negating the necessity of the majority's harmless error analysis. Accordingly, I respectfully agree in part and concur in part.